No. 60,287

R. B. ENTERPRISES, INC., *Appellant*, v. STATE OF KANSAS, *Appellee*.

(747 P.2d 152)

Opinion filed December 11, 1987.

*Jeffrey R. Elder,* of Myers & Pottroff, of Manhattan, argued the cause, and *Dan H. Myers,* of the same firm, was on the briefs for appellant.

*Brian Cox,* of the Kansas Department of Revenue, of Topeka, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal of a civil action wherein R. B. Enterprises, Inc., unsuccessfully challenged the constitutionality of K.S.A. 1986 Supp. 8-116a(b). The defendant State of Kansas cross-appeals the district court's denial of its motion for judgment of involuntary dismissal and its motion for the imposition of stenographic costs on R. B. pursuant to K.S.A. 60-2002(a) and 60-2003(5).

This dispute arose from the following facts. R. B. Enterprises, Inc., is a used car dealership located solely in Kansas. Seventy-five percent of the cars R. B. purchases for resale come from outside the State of Kansas. It sells approximately 60% of these cars in its retail operation in Manhattan. The other 40% of its cars are sold wholesale, often through auctions in other states.

When R. B. sells a car which has a Kansas title, it merely endorses the title over to the purchaser. When it buys a car in Colorado, however, the transaction is more complex. A Colorado title provides only one space for assignment. Dealers which have a place of business in Colorado may attach an affidavit and make a reassignment; out-of-state dealers are not authorized to do this. It is therefore difficult for R. B., a Kansas dealer, to sell used cars purchased in Colorado because, in transferring the title to itself, it uses the only available assignment space on the title. R. B. is thus forced to apply for a Kansas title. To obtain a Kansas title, R. B. must comply with K.S.A. 1986 Supp. 8-116a(b). This statute provides a used car titled in another jurisdiction must be inspected before a Kansas title will be issued. Thus R. B. must bring the car to Kansas for inspection even if it is going to resell the car in another state.

R. B. buys many of its cars from auctions around the country, especially in Colorado, Texas, Oklahoma, and Missouri, but complains only of problems in Colorado. There is no evidence other states do not allow multiple assignments on their titles. Kansas allows two reassignments by dealers. K.S.A. 1986 Supp. 8-135(c)(2).

Let us look at the history of Kansas vehicle inspection laws. The forerunner of K.S.A. 1986 Supp. 8-116a is found at K.S.A. 8-1750 *et seq.* (repealed L. 1984, Ch. 35, § 6). This act required the inspection of used vehicles sought to be sold at retail or registered for the first time in Kansas. K.S.A. 8-1754(a). Although the inspection was primarily for safety purposes, K.S.A. 8-1753, vehicle identification numbers were checked and recorded in order to control stolen vehicles. The Superintendent of the Kansas Highway Patrol was given authority to accept inspections carried out by states with laws similar to Kansas. K.S.A. 8-1756.

In 1983, objections to the program caused the introduction of

Senate Bill No. 288, which in its original form abolished routine inspections. The Kansas Department of Revenue and the Highway Patrol protested the abolition of inspections, expressing concern that Kansas would become a dumping ground for stolen vehicles if vehicles titled for the first time in Kansas were not required to be inspected for vehicle identification numbers. In response to the objections, a new section requiring such inspections was added to the bill before its enactment in March of 1984. L. 1984, ch. 35, § 5. Although this section was repealed by Senate Bill No. 591 in May of 1984, it was replaced by New Section 11(b), which was quite similar but added the $10 charge for inspections. L. 1984, ch. 25, §§ 11, 13. This new section is codified at K.S.A. 1984 Supp. 8-116a(b), and states in pertinent part:

"[A]ny person making application for any original Kansas title for a used vehicle which is, at the time of making application, titled in another jurisdiction, shall, as a condition precedent to obtaining any Kansas title, have such vehicle checked by the Kansas highway patrol for verification that the vehicle identification number shown on the foreign title is genuine and agrees with the identification number on the vehicle. The verification shall be made upon forms prescribed by the division of vehicles which shall contain such information as the secretary of revenue shall require by rules and regulations. A charge of $10 per hour, or part thereof, with a minimum charge of $10, shall be made for checks under this subsection."

It was this statute R. B. sought to have held unconstitutional by the district court. By the time of trial, however, the statute had again been amended. K.S.A. 1986 Supp. 8-116a(b) provides as follows:

"[A]ny person making application for any original Kansas title for a used vehicle which is, at the time of making application, titled in another jurisdiction, shall, as a condition precedent to obtaining any Kansas title, have such vehicle checked by the Kansas highway patrol for verification that the vehicle identification number shown on the foreign title is genuine and agrees with the identification number on the vehicle. Checks under this section may include inspection for possible violation of K.S.A. 8-611 and amendments thereto or other evidence of possible fraud. The verification shall be made upon forms prescribed by the division of vehicles which shall contain such information as the secretary of revenue shall require by rules and regulations. A charge of $10 per hour or part thereof, with a minimum charge of $10, shall be made for checks under this subsection. When a vehicle is registered in another state, but is financed by a Kansas financial institution and is repossessed in another state and such vehicle will not be returned to Kansas, the check required by this subsection (b) shall not be required to obtain a valid Kansas title or registration."

In spite of the amendment, R. B. did not seek to amend its petition to change the statute citation. The district court held the amended statute presented the same controversy as the 1984 law and treated the petition as if amended. It therefore held the State was incorrect in arguing that R. B.'s petition was moot.

The State argues the district court erred in denying its motion for involuntary dismissal because R. B. did not amend its petition. It argues even if the district court would have allowed an amendment to R. B.'s petition, it could not do so when R. B. failed to move for such an amendment. The State points out it timely advised the district court of the issue and did not impliedly consent to an amendment by failing to object at trial, K.S.A. 60-215(b). It contends the amendments were significant: the amended statute authorizes odometer checks and adds an exemption for financial institutions, issues which R. B. now raises in support of its appeal. See L. 1985, ch. 40, § 1; ch. 41, § 1.

The amendment to the statute did not affect the issue raised by R. B., leaving the same ultimate issue for resolution. We therefore agree with the trial court and treat the petition as if formally amended to include the amended statute citation.

Under K.S.A. 1986 Supp. 8-116a(b), an applicant for a new title in Kansas must produce the foreign title at the time of the vehicle inspection. This prevents the problem of "paper cars," wherein worthless or nonexistent cars are titled and insured, then reported stolen to collect the insurance.

The inspections are carried out by the Kansas Highway Patrol or its designees as authorized by statute and take no more than 15 minutes. The inspectors match the vehicle identification number, shown on the foreign title, with the identification number on the vehicle to prevent "paper washing" of stolen cars. This is also prevented by checking the documents themselves for discrepancies or alterations. The vehicle identification number (VIN) plate is checked to ensure its authenticity, the odometer is checked to see that its numbers are properly aligned, and the general appearance of the car is compared with the mileage given on the odometer. A check is made to see if the car is listed as stolen, and it is noted if the vehicle is "gray market,"

*i.e.,* not manufactured for the United States market in compliance with Federal environmental safety standards.

The State contends there is good reason to single out foreign vehicles for inspection. Car theft, odometer fraud, and "paper car" scams are more likely to be perpetrated across state lines, both into and out of Kansas, because the confusion caused by their "paper trails" makes it less likely the original perpetrator will be ascertained. It is also likely "gray market" vehicles will be taken to Kansas to be titled because it is among the states which do not require proof of federal environmental safety standard compliance prior to titling. Thus, the State argues, vehicle inspection is a reasonable exercise of the police power of the State of Kansas.

R. B.'s sole contention on appeal is that K.S.A. 1986 Supp. 8-116a(b) violates the commerce clause, U. S. Const. art. I, § 8, clause 3. We begin our constitutional review of the statute by presuming it to be valid. We do not ask what the legislature should do but what it can do. *Brown v. Wichita State University,* 219 Kan. 2, 547 P.2d 1015 (1976). Statutes not facially discriminatory which cause only incidental burden to interstate commerce are unconstitutional only if that burden is "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.* 397 U.S. 137, 142, 25 L. Ed. 2d 174, 90 S. Ct. 844 (1970). There are three questions this court must ask in considering whether the challenged statute violates the commerce clause. *Hughes v. Oklahoma,* 441 U.S. 322, 336, 60 L. Ed. 2d 250, 99 S. Ct. 1727 (1979).

The first question is whether the statute discriminates against interstate commerce either in its effect or on its face. The State contends the district court erred in denying its motion at the close of R. B.'s case for judgment of involuntary dismissal on the grounds K.S.A. 1986 Supp. 8-116a(b) does not restrain or burden interstate commerce. The court held the statute facially discriminatory because it is interstate commerce which gives rise to the operation of the statute, stating: "If one buys a used car in another state and brings it into Kansas, then he must comply with the inspection requirement of K.S.A. 8-116a prior to being able to obtain a certificate of title. If, however, one purchases a used vehicle in Kansas, no such requirement to have an inspection

exists." R. B. agrees, declaring the State has no interest in its sale of cars outside Kansas.

We agree with the district court that K.S.A. 1986 Supp. 8-116a(b) is facially discriminatory against out-of-state used vehicles for which Kansas titles are sought and is thus a burden on interstate commerce. This shifts the burden to the State to show the burden on interstate commerce is incidental to the purpose of the registration and is outweighed by the benefits derived from the inspections. Under the second prong of *Hughes,* we must determine whether these benefits serve a legitimate state purpose.

The State argues the district court and R. B. are confused in believing the State's interest is in the sale of the cars; rather, the interest of the State is in the protection of the integrity of its title program. The State claims R. B.'s real complaint is that it cannot reassign the title to a used car under Colorado law without establishing a place of business within the state. The State of Kansas does not require R. B. to bring a vehicle back to Kansas for an inspection in order to sell it. It only requires an inspection when R. B. applies for a Kansas title. Such a title implies the State has approved the vehicle and its paperwork. The issuance of a Kansas title can obliterate or "wash away" title defects; states having a reputation for "easy washing" become dumping grounds for suspect vehicles and titles.

R. B. complains Kansas should make an exception for vehicles which, although granted Kansas title, are meant for out-of-state sale. But, a vehicle sold out of state may eventually come back into Kansas, and any problems with it or its paperwork are more easily caught at the beginning of its paper chain. There is also no way of ascertaining whether a particular vehicle is in fact intended for sale outside the State of Kansas. The State cannot track the progress of each vehicle after granting title. If vehicles represented as bound for other states were allowed to be titled without inspection, the law would be made ineffective.

The State further argues it does not require inspections for the purpose of burdening interstate commerce, but it does so to eliminate those situations where fraud or theft can easily be disguised. The legislature enacted a law to prevent the most obvious abuses. The statute does not apply, for example, to new

vehicles, regardless of their origin. It does not apply to used cars simply because they cross the state line, but is applied only if the owner of such car wishes to change a foreign title to a Kansas title. K.S.A. 1986 Supp. 8-116a(b), K.S.A. 1986 Supp. 8-135(c)(9).

The State further points out the statute requires two other types of vehicles to be inspected, regardless of point of origin. These are reconstructed cars and non-highway to highway vehicles. K.S.A. 1986 Supp. 8-116a(a); K.S.A. 1986 Supp. 8-198(e). The State requires these vehicles to be inspected because, similar to out-of-state used cars, they present unique opportunities for criminal profit. See Senate Bill No. 591; L. 1984, ch. 25, § 10(e).

The State's evidence was that the purpose of the statute is to prevent consumer fraud and that automobile theft and false titling of vehicles is a potent area for such illegal endeavors. We hold there is a legitimate state interest in preventing consumer fraud. We further hold the State met its burden of proof in showing K.S.A. 1986 Supp. 8-116a(b) effective in accomplishing the State's purpose. Thus, we conclude the burden on interstate commerce created by the act is merely incidental to the reasonable exercise of Kansas police power in preventing theft and fraud.

R. B. nevertheless contends the statute is a protectionist measure which discriminates against out-of-state cars for no reason other than their origin, in violation of *Philadelphia v. New Jersey*, 437 U.S. 617, 57 L. Ed. 2d 475, 98 S. Ct. 2531 (1978). If this argument is correct, violation of the commerce clause has reached epidemic proportions.

The Uniform Vehicle Code and Model Traffic Ordinance requires inspection of vehicles previously registered in another state before a certificate of title is issued. Uniform Vehicle Code § 3-104(c) (1984 Supp.) At least a dozen states in this country have statutes requiring inspection of such vehicles before a title will be issued. See, *e.g.,* Ala. Code § 32-8-35 (1975); Conn. Gen. Stat. § 14-171 (1985); Fla. Stat. § 319.23 (1985); Ky. Rev. Stat. Ann. § 186A.115 (Bobbs-Merrill 1986 Supp.); Minn. Stat. § 168A.04 (1986); Ohio Rev. Code Ann. § 4505.06 (Page 1986 Supp.); Or. Rev. Stat. § 803.210 (1987); R.I. Gen. Laws § 31-3.1-4 (1982); Tex. Stat. Ann. art. 6687-1 (Vernon 1987 Supp.);

Wash. Rev. Code § 46.12.030 (1985); Wis. Stat. § 342.06 (1985-86); Wyo. Stat. § 31-2-103 (1987 Supp.).

R. B. further argues the statute is an improper revenue raising measure hidden under the guise of an exercise of the police power. It directs our attention to K.S.A. 1986 Supp. 8-116a(d), which provides if the highway patrol performs an inspection, the entire fee of $10 is deposited in the State general revenue fund. The statute provides no limitation to the use of these fees. If a designee performs the inspection, the designee keeps $9 and remits $1, which is also placed in the general revenue fund without limitation imposed on its use.

In *Panhandle Eastern Pipe Line Co. v. Fadely*, 183 Kan. 803, 806-08, 332 P.2d 568 (1958), we held a plan unconstitutional whereby the State general revenue fund received 20% of fees collected by the state corporation commission. This court held fees cannot be collected over the amount needed to defray the legitimate costs of a program affecting interstate commerce. The State argues *Panhandle Eastern* held reimbursement to a general fund was unconstitutional only if it was facially apparent that part of the funds were to be used for purposes other than the administration of the program or if remuneration was above the costs of the program. The State contends the statute shows no such facial purpose and points out the total costs of the program are not met by the fees imposed.

The State argues the issue is moot. Senate Bill No. 109, effective July 1, 1987, now provides that fees collected from the inspections shall be placed in a "vehicle identification number fee fund." L. 1987, ch. 41, § 1(e).

The district court held the evidence clearly showed the cost of administering the inspection program is higher than the fees collected. Evidence was presented that in 1986, $270,000 was deposited in the state general fund from inspection fees. The evidence relied upon was that the inspection program cost the state $500,000 a year. Findings of fact by the district court which are supported by substantial competent evidence will not be disturbed by this court. See *Leeper v. Schroer, Rice, Bryan & Lykins, P.A.*, 241 Kan. 241, 243, 736 P.2d 882 (1987). We hold R. B.'s argument that the inspection law is a revenue measure is without merit for two reasons: It does not yield excess revenue

over the cost of inspection, and the fees are not placed in the general fund.

The final prong of the *Hughes* test is whether the State's interest could be equally well promoted by a means which does not discriminate against interstate commerce. R. B. points out an exception to the inspection requirement was made in 1985 for Kansas financial institutions. This exception now allows a Kansas financial institution to acquire Kansas title to a vehicle it finances without inspection when the vehicle is registered in another state, repossessed in another state, and not returned to Kansas. K.S.A. 1986 Supp. 8-116a(b).

The State argues a thief is less likely to need the services of a financial institution in order to obtain a car, or that having a financial institution involved makes criminal behavior less likely to occur because of the institution's careful inspection of its debtor.

The exemption, furthermore, applies only to vehicles *registered* in another state. The requirement of registration offers safeguards not present in situations where the vehicles are only assigned. Under Kansas law a vehicle cannot be registered unless the applicant presents acceptable evidence of ownership and applies for an original certificate of title. K.S.A. 1986 Supp. 8-135(c).

The decision by the legislature to create the exemption is analogous to the situation presented in *Main v. Taylor*, 477 U.S 131, 91 L. Ed. 2d 110, 106 S. Ct. 2440 (1986), where the Court upheld a ban on importation of golden shiners, a kind of baitfish, although the State of Maine allowed importation of salmonids. Safeguards existed for the importation of salmonids which were not present for baitfish. The Court held the State may single out areas needing police protection while exempting areas adequately covered by other procedures. We so hold.

R. B. presents other examples which it contends proves the State failed to meet its burden of proving nondiscriminatory alternatives could not meet its objectives as well as the contested statute. R. B. suggests 15 U.S.C. § 1981 *et seq.* (1982) provides a system which detects odometer rollbacks with less impact on interstate commerce and less inconvenience to the consumer. It claims the State has alternative means for checking VIN errors

and stolen vehicles which do not discriminate against interstate commerce because they apply to all vehicles titled in Kansas. The State's evidence revealed that mandatory inspection of all vehicles upon which a title transfer is sought would be a better deterrent to fraud and theft than the inspection provided by statute, but such a program would not be cost-effective since most theft and fraud involves out-of-state vehicles.

We hold the State met its burden of showing there are no nondiscriminatory alternatives which can meet its objectives as well as the program provided by the statute. The district court so found with the support of substantial competent evidence. We will not disturb those findings on appeal. *Holly Energy, Inc. v. Patrick,* 239 Kan. 528, 722 P.2d 1073 (1986).

The final issue is the cross-appeal. The State argues the district court erred in denying its motion to determine the taxability of the costs of the depositions of State witnesses which were received in evidence. The State sought to impose upon R. B. the stenographer's charge of $1,090 for transcription of the depositions. K.S.A. 60-2002(a) provides that costs shall be allowed to the party in whose favor judgment is rendered unless the district judge provides otherwise. K.S.A. 60-2003(5) allows stenographic charges for depositions which are used in evidence to be included in those costs.

The district court denied the motion in order to avoid a "chilling effect" on the litigation of bona fide constitutional claims. The State cites *Betts v. General Motors Corp.,* 236 Kan. 108, 118-19, 689 P.2d 795 (1984), in support of its contention that concern with chilling effects is improper in application to non-extraordinary costs, *i.e.,* those enumerated in K.S.A. 60-2003. In *Betts* this court held the district court did not abuse its discretion in refusing to allow the prevailing defendant an award of extraordinary expenses beyond those allowed under K.S.A. 60-2003. The State contends a "chilling effect" is avoided by not assessing extraordinary expenses against a losing party except in bad faith cases pursuant to K.S.A. 60-2007. Non-extraordinary costs do not have such a chilling effect, it argues, and the legislature should be considered to have so determined when it enacted the statutes allowing costs.

This court will review the taxing of costs by the district court

only to determine whether there has been an abuse of discretion. *Negley v. Massey Ferguson, Inc.*, 229 Kan. 465, 472-73, 625 P.2d 472 (1981). Only if this court finds no reasonable person would have denied the taxing of the costs to R. B. will the district court be found to have abused its discretion. See *Rollins v. Kansas Dept. of Transportation*, 238 Kan. 453, 459, 711 P.2d 1330 (1985). We find no abuse of discretion. All other issues raised were considered and determined not to merit further discussion.

The judgment of the trial court is affirmed.