The Honorable Steve Higginbothom State Senator P.O. Box 242 Marianna, AR 72360
Dear Senator Higginbothom:
I am writing in response to your request for an opinion concerning the constitutionality of Act 1329 of 2003, which is codified at A.C.A. §27-14-724 (Supp. 2003). You have identified what you perceive to be constitutional defects in this legislation as follows:
 [A.C.A. § 27-14-724] allows for the verification and inspection of vehicle identification numbers to be done by new car dealers but does not allow used car dealers this same privilege of inspection and verification. This is discriminatory to me. Secondly, this Act also appears to interfere with the normal course of interstate commerce.
RESPONSE
It is my opinion that A.C.A. § 27-14-724 does not impermissibly discriminate between new car dealers and used car dealers. Nor, in my opinion, does it unduly burden interstate commerce in contravention of the Commerce Clause. It is my opinion that the statute would likely withstand constitutional scrutiny if challenged.
I will first address your concern regarding interstate commerce. The statute in essence requires verification of the vehicle identification number (VIN) before an Arkansas title will be issued for a vehicle that is titled in another jurisdiction.[1] The verification requirement also applies if the owner has no assigned title or manufacturer's certificate of origin, regardless of the vehicle's origin. These requirements derive from the statute's definition of "foreign vehicle." Subsection (b)(1) requires that "[e]very application for registration and certificate of title for a foreign vehicle must be accompanied by a verification of the vehicle identification number." (Emphasis added). "Foreign vehicle" is defined as:
 [E]very vehicle of a type required to be registered under this chapter that is brought into this state from another state, territory, or country and that is not registered in this state and every vehicle of a type required to be registered under this chapter for which the owner does not have a properly endorsed and assigned certificate of title or manufacturer's certificate of origin.
A.C.A. § 27-14-724(a) (Supp. 2003) (emphasis added).
I have emphasized the word "and" to draw attention to the two clauses under the definition, and the two separate categories identified thereby which reflect the different treatment of vehicles that are brought in from out of state. As you can see, out-of-state vehicles for which Arkansas titles are sought are generally subject to the VIN verification requirement regardless of whether the owner has an assigned title or a certificate or origin (the only exception applying to those owned by a "new resident," see n. 1, supra). On the other hand, reading the two clauses together, it seems clear that no such requirement to have the VIN number verified exists for vehicles that are already registered in Arkansas, unless for some reason the owner does not have a properly endorsed and assigned title or a manufacturer's certificate of origin. In effect, if one purchases a vehicle in another state and then brings it into Arkansas, he or she must comply with the VIN verification requirement of A.C.A. § 27-14-724 prior to being able to obtain a certificate of title. Unlike the purchaser in Arkansas who is seeking a transfer of an Arkansas title, acceptable evidence of ownership will not relieve the out-of-state purchaser from the verification requirement.
This different treatment of in-state and out-of state vehicles triggers scrutiny under the Commerce Clause of the United States Constitution, which provides that `[t]he Congress shall have Power . . . [t]o regulate Commerce . . . among the several States. . . .' U.S. Const. art I, § 8, cl 3. Generally, laws that impact upon the flow of commerce between states are suspect under the Commerce Clause. While this clause is a grant of power to Congress, it also directly limits the power of the states to discriminate against interstate commerce. Wyoming v. Oklahoma,502 U.S. 437 (1992).
It is my opinion that if challenged, A.C.A. § 27-14-724 would withstand a commerce clause challenge. Even if the statute were characterized as facially discriminatory, and thus subject to "strict scrutiny" (seegenerally Maine v. Taylor, 477 U.S. 131, (1986)), in my opinion it is likely justified by the State of Arkansas' interest in protecting the integrity of its title program. The statute's purpose, stated as follows in the emergency clause of Act 1329, is to reduce automobile theft and false titling:
 It is found and determined . . . that automobile thieves throughout the United States are registering stolen vehicles in Arkansas and obtaining certificates of title to these vehicles; that requiring verification of a vehicle identification number for foreign vehicles by an authorized law enforcement agency in Arkansas will reduce the sale of stolen vehicles and the rate of insurance fraud; and that this act accomplishes those goals without interfering with the registration process for bona fide residents of Arkansas.
Acts 2003, No. 1329, § 2.
A similar statute was at issue in R.B. Enterprises, Inc. v. State,242 Kan. 241, 747 P.2d 152 (1987), wherein the State of Kansas successfully argued that the burden on interstate commerce created by its statute was "merely incidental to the reasonable exercise of Kansas police power in preventing theft and fraud." 242 Kan. at 247. The statute required an inspection of a used car titled in another jurisdiction before a Kansas titled would be issued. The requirement only applied if the application was for an original Kansas title. A used car purchased in Kansas was not subject to the inspection. Id. at 244-245. The inspectors matched the VIN shown on the foreign title with the VIN on the vehicle to prevent so-called "paper washing" of stolen cars, described as "the problem of `paper cars,' wherein worthless or nonexistent cars are titled and insured, then reported stolen to collect the insurance." Id.
The Kansas Supreme Court found this to be a legitimate state purpose. The state also successfully contended that there was good reason to single out foreign vehicles for inspection because "out-of-state used cars . . . present unique opportunities for criminal profit." Id. at 247. This led the court to conclude that the legislature enacted the law "to prevent the most obvious abuses[,]" after noting that the statute did not apply to new vehicles, "regardless of their origin." Id. The state also met its burden of proving that the statute's objectives could not be served as well by nondiscriminatory means. Id. at 250. (See generally Hughes v.Oklahoma, 441 U.S. 322 (1979) (setting out the applicable Commerce Clause test in this context)). In this regard, the state was able to show that although mandatory inspection of all vehicles upon which a title transfer is sought would be a better deterrent to fraud and theft, "such a program would not be cost-effective since most theft and fraud involves out-of-state vehicles." Id.
It is my opinion that A.C.A. § 27-14-724 would, similarly, likely be upheld as a means of preventing consumer fraud and false titling of vehicles. My only reservation in this regard stems from the provision pertaining to a new out-of-state vehicle where the purchaser is not a "new resident" falling within subsection (c) (1). Because the vehicle will be brought in from out of state, VIN verification must be obtained notwithstanding that the owner of the new vehicle will likely have a manufacturer's certificate of origin. (As noted above, verification is not required if the vehicle was purchased in-state and the purchaser has the certificate of origin). The potential for theft and fraud is not obvious in that instance. Consequently, this provision may undermine to some extent the argument that the Arkansas statute prevents the most obvious abuses. Compare R.B. Enterprises, supra. I cannot conclude, however, that the act would fail on this basis. To the contrary, the statute is presumed to be constitutional, and all doubts are to be resolved in favor of its constitutionality if it is possible to do so.See generally Fayetteville School Dist. v. Arkansas State Board ofEducation, 313 Ark. 1, 852 S.W.2d 122 (1993). Additionally, I believe a court might be persuaded that this provision is severable from the remainder of the act, given the act's legitimate objectives as reflected in R.B. Enterprises. See generally Smith v. Bentley, 493 F. Supp. 916
(E.D. Ark. 1980) and Borchert v. Scott, 248 Ark. 1041, 460 S.W.2d 28
(1970) (setting forth the general test for determining whether the remaining portion of an act will be sustained after the invalid provision is stricken).
It is therefore my opinion that A.C.A. § 27-14-724 would likely withstand challenge based on the Commerce Clause.
You have also indicated that you believe the statute is discriminatory based on the distinction drawn between new car dealers and used car dealers as regards the allowed procedure for VIN verification. The relevant provision states:
 Any person, firm, corporation, or trust licensed under the provisions of §§ 23-112-301 — 23-112-315, may provide the required verification on its inventory on a form prescribed by the department.
A.C.A. § 27-14-724(d) (Supp. 2003).
The cited Code sections are part of the Arkansas Motor Vehicle Commission Act (A.C.A. § 23-112-101 — 509) which governs, inter alia, the licensure of new motor vehicle dealers. See A.C.A. §§ 23-112-102(b) (legislative findings) and 23-112-301(a)(2) (licensed required of "a new motor vehicle dealer.") Used motor vehicle dealers are separately licensed under A.C.A. § 23-112-601 et seq. Consequently, a used motor vehicle dealer does not fall within this provision authorizing a dealer to do its own VIN verification, but rather is subject to subsection (b) of §27-14-724, which provides for verification by local law enforcement or by the Department of State Police of a designee of the Department.[2]
The constitutional principle implicated by your question in this regard is the doctrine of equal protection, which arises out of theFourteenth Amendment of the United States Constitution. The equal protection doctrine prohibits certain types of "classifications" that result in the disparate treatment of those who are similarly situated. However, classifications in and of themselves do not violate the equal protection doctrine. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity is arbitrary — that is, that the disparity has no conceivable rational basis or rational relation to a legitimate end. Vacco v. Quill, 521 U.S. 793 (1997);Medlock v. Leathers, 311 Ark. 175, 842 S.W.2d 428 (1992). Moreover, the courts must not only presume the constitutionality of the challenged classification, but they must also uphold the scheme without requiring a showing of an actual rational basis, if any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Id.
It is my opinion that A.C.A. § 27-14-724(d) does not violate equal protection. No fundamental right is implicated by this statute, and used car dealers do not fall within a "suspect class."[3] Accordingly, any rational basis will support the statute's different treatment of new and used car dealers; and in my opinion such a basis may be found in the respective licensing statutes, noted above. It is my opinion that the legislature could have rationally premised § 27-14-724(d) on the more rigorous provisions governing new car dealers, including the regulation of such dealers by the Arkansas Motor Vehicle Commission. Compare A.C.A. §§ 23-112-301 and 23-112-607.
In conclusion, therefore, it is my opinion that A.C.A. § 27-14-724 does not discriminate against used car dealers in violation of the equal protection doctrine, nor does it discriminate against interstate commerce in a manner prohibited by the Commerce Clause.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] An exception applies in the case of a new resident who has a valid Arkansas driver's license, where the out-of-state certificate of title to the vehicle sought to be registered reflects the same name as the driver's license. See A.C.A. § 27-14-724(c) (Supp. 2003).
[2] The full text of the relevant portion of subsection (b) provides:
 (2) The verification shall be conducted by a certified law enforcement officer of any city or county in Arkansas or by the Department of Arkansas State Police or a designee of the department.
 (3)(A) If the vehicle is taken to a city or county law enforcement agency facility or to a department facility for inspection, the inspection shall be conducted at no charge.
 (B) Any vehicle that is required to be inspected at a location other than a city or county law enforcement facility or a department facility shall be inspected by the department or its designee for a fee of twenty-five dollars ($25.00) that shall be dedicated to cover or defray the cost of the verification process.
 (4) The department shall adopt reasonable rules to ensure that the verification process is available at convenient times and locations.
[3] Such classes have been identified in legislation based on race, (Loving v. Virginia, 388 U.S. 1 (1967)), alienage (Graham v. Richardson,403 U.S. 365 (1971)), or national origin (Oyama v. California),332 U.S. 633 (1948)).