No. 85,499

DALE E. McCORMICK, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS OF SHAWNEE, COUNTY, KANSAS; SHAWNEE COUNTY; CYNTHIA J. LONG AS A PRIVATE INDIVIDUAL; CYNTHIA J. LONG AS A DEPUTY DISTRICT ATTORNEY; and JOAN HAMILTON AS A PRIVATE INDIVIDUAL, *Appellees*.

(35 P.3d 815)

Opinion filed December 7, 2001.

*Dale E. McCormick*, of Lawrence, argued the cause pro se and was on the briefs for appellant.

*M. J. Willoughby*, assistant attorney general, argued the cause, and *Carla J. Stovall*, attorney general, was with her on the briefs for appellees Hamilton and Long.

*Richard V. Eckert*, county counselor, was on the brief for appellee Board of County Commissioners of Shawnee County and Shawnee County.

*Angela M. Wilson* and *David Miller*, of the Douglas County Judicial and Law Enforcement Center, of Lawrence, were on the brief for *amicus curiae* Kansas County and District Attorneys Association.

The opinion of the court was delivered by

ABBOTT, J.: Appellee Cynthia J. Long, assistant district attorney for Shawnee County, Kansas, signed a probable cause affidavit on September 8, 1999, and filed a criminal complaint against appellant Dale E. McCormick for stalking. K.S.A. 21-3438. The complaint was voluntarily dismissed by the State. The day after the complaint was dismissed, McCormick was detained by the University of Kansas police for approximately 1 hour while police determined if a warrant remained outstanding. McCormick, acting pro se, brought suit alleging negligence, various other tort claims, and a claim un-

der 42 U.S.C. § 1983 (1994) against Long, the Board of County Commissioners of Shawnee County (Board), the Shawnee County District Attorney's office, and district attorney Joan Hamilton. On June 1, 2000, the district court granted defendants' motions to dismiss McCormick's petition. McCormick appealed the dismissal.

The Court of Appeals affirmed the district court's dismissal of McCormick's claims against the Board and Hamilton and found that the claim against the district attorney's office had been abandoned on appeal. *McCormick v. Board of Shawnee County Comm'rs*, 28 Kan. App. 2d 744, 745, 24 P.3d 739 (2001). However, as to McCormick's claim against Long, the Court of Appeals held that while the act of filing a complaint fell within the duties of a prosecutor, signing a probable cause affidavit did not. Thus, the court concluded that, in regard to signing the probable cause affidavit, Long was not entitled to absolute prosecutorial immunity or qualified immunity as to the § 1983 claim, nor was she immune from liability on the state tort law claims under either the public duty doctrine or discretionary function exception to the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq*. This court granted Long's petition for review.

The 8-page probable cause affidavit prepared by Long to support the felony stalking complaint began with the following prefatory statement:

"I, Cynthia J. Long, Assistant District Attorney, being of lawful age and first duly sworn upon my oath, depose and state as follows: that I have received the following information from official TPD 20981-99; 19726-99; 20409-99; 25184-99 and from officers whom I know from past investigations to be truthful and reliable."

The final paragraph of the affidavit stated:

"All of the aforementioned events occurred in Shawnee County, Kansas. Wherefore the affiant believes that there are reasonable grounds and probable cause to believe that DALE E. MCCORMICK committed the crimes described above and prays the Court issue a warrant for his/her arrest."

The State voluntarily dismissed the complaint on September 28, 1999. On September 29, 1999, officers of the University of Kansas Public Safety Office, believing there was an active arrest warrant

for McCormick, took him into custody and detained him for approximately 1 hour. As a result of his arrest and detention, McCormick filed this litigation, asserting various tort claims and a § 1983 claim. McCormick's petition included the following factual allegations:

"10. On or about the 8th day of September, 1999, while in connivance with other private persons and governmental entities, Cynthia J. Long, acting as an agent of Shawnee County and the [Shawnee County District Attorney's office], swore her name to a 'felony stalking' 'complaint' against plaintiff in Shawnee County District Court. This utterly fraudulent 'complaint' caused a charge of 'felony stalking' to lie against plaintiff, subsequently causing a 'felony warrant' to issue for the arrest of plaintiff. The case number of this malicious prosecution was 99-CR-3636.

"As a 'specific' averment of 'fraud,' said 'complaint' alleged that plaintiff had been feloniously 'stalking' [Y.H.] since 12-31-98. In reality, plaintiff and [Y.H.] had a strange but intimate relationship through June of 1999, several weeks prior to [Y.H.] making her first fraudulent 'police report' against plaintiff on 6-27-99. Ms. Long was possessing [sic] of information that established these facts, but she deliberately excluded this information from the false and fraudulent 'felony stalking complaint' and 'affidavit' she 'swore' against plaintiff. Ms. Long intentionally, or with utterly malicious negligence, caused a magistrate to be deceived into allowing this fraudulent 'stalking' charge to lie against plaintiff, subsequently causing said magistrate to issue 'felony warrants' for the arrest of plaintiff.

. . . .

"12. The 'felony stalking' 'complaint' and 'affidavit' that Ms. Long swore against plaintiff on or about 9-8-99, were perjured, and could scarcely have been more contradictory, false, deceptive, deceitful, or misrepresentative of the facts and circumstances surrounding plaintiff's relationship with [Y.H.]. The utter falsity of these instruments 'sworn' by Ms. Long clearly attaches liability to each of the defendants for damages suffered by plaintiff as a result of the ensuing malicious prosecution."

After reviewing the motions to dismiss filed by the defendants, the district court held that McCormick failed to state a claim for which relief could be granted against the Shawnee County District Attorney's office. The district court considered *Hopkins v. State*, 237 Kan. 601, 702 P.2d 311 (1985), and K.S.A. 22a-101 *et seq.*, and found that the legislature had not created statutory capacity for the District Attorney's office to be sued. In addition, because there was no cause of action against the District Attorney's office, the court found that the requested injunctions could not be granted.

In regard to McCormick's claims against Hamilton, the district court concluded that: (1) there was no privity between Hamilton and Long, and thus no privity between Hamilton and McCormick; (2) Hamilton owed no duty to McCormick for which she could be held liable; (3) because the District Attorney's office could not be held liable, Hamilton could not be held personally liable; (4) even if Hamilton had been aware of the issuance of the warrant, there was no causal connection between her knowledge and McCormick's detention by University of Kansas police; (5) K.S.A. 75-6104(e) provided her immunity under the discretionary function exception to the KTCA; and (6) Hamilton had absolute prosecutorial immunity under *Kalina v. Fletcher*, 522 U.S. 118, 139 L. Ed. 2d 471, 118 S. Ct. 502 (1997).

As to Long, the district court also found McCormick had failed to state a claim upon which relief could be granted because: (1) the only action by Long resulting in harm to McCormick was that she signed a criminal complaint and affidavit leading to the issuance of an arrest warrant; (2) to recover in negligence, McCormick must prove, among other things, the existence of a duty, but Long owned no specific duty to McCormick; (3) McCormick could not demonstrate any deprivation of rights or negligence; (4) Long was acting within her prosecutorial discretion when she filed charges against McCormick; (5) McCormick could not show that Long's conduct resulted in his detention; (6) Long enjoyed immunity under the KTCA; and (7) Long enjoyed absolute prosecutorial immunity under *Kalina*.

On June 16, 2000, McCormick appealed the district court's dismissal. Upon review, the Kansas Court of Appeals found that because McCormick abandoned his claim for injunctive relief in his written brief, he effectively removed the District Attorney's office from the litigation. As to the other defendants, the Court of Appeals held the district court had properly granted the motions to dismiss as to the Board and Hamilton. However, it held that McCormick's petition had alleged cognizable claims under § 1983 and state tort law against Long in connection with swearing out the probable cause affidavit. This court granted Long's petition for review of the Court of Appeals' decision.

Upon appellate review of a district court's order granting a motion to dismiss for failure to state a claim, this court is required to assume that the facts alleged by the plaintiffs are true, along with any references reasonably to be drawn therefrom. We must also decide whether those facts and inferences state a claim on the theories presented by the plaintiffs and also on any other possible theory. *Smith v. State*, 264 Kan. 348, 353, 955 P.2d 1293 (1998).

## I. § 1983 CLAIM

Here, Long requests this court to review and vacate the portion of the Court of Appeals' decision reversing the district court's dismissal of McCormick's action against her. Long argues that the Court of Appeals made a misstatement when it held she was "not entitled to qualified immunity" from McCormick's § 1983 claim. More specifically, Long contends that the Court of Appeals applied the wrong analysis in holding that Long was not entitled to qualified immunity, and urges this court to analyze the qualified immunity issue using a heightened pleading standard.

As noted by our Court of Appeals, "prosecutors have absolute immunity for activities intimately associated with the judicial phase of the criminal process, that is, for performing the traditional functions of an advocate." 28 Kan. App. 2d at 748. Absolute immunity is not afforded to prosecutors in every instance, however. In *Burns v. Reed*, 500 U.S. 478, 114 L. Ed. 2d 547, 111 S. Ct. 1934 (1991), the United States Supreme Court stated that, in light of the common-law history of immunity accorded to prosecutors and the interests supporting that immunity, state prosecutors are "absolutely immune for initiating a prosecution and for presenting the State's case" insofar as that conduct is " 'intimately associated with the judicial phase of the criminal process.' " 500 U.S. at 491-92. Yet the *Burns* Court refused to find a justification for extending absolute immunity from liability under § 1983 to a prosecutor giving legal advice to the police because, in the Court's view, absolute immunity was "designed to free the *judicial process*," not every form of conduct of a prosecutor. 500 U.S. at 494. The Court, considering whether anything short of absolute immunity would discourage prosecutors from performing their obligations, observed

that the defense of qualified immunity "provides ample protection to all but the plainly incompetent *or those who knowingly violate the law.*" 500 U.S. at 494-95.

The case of *Mitchell v. Forsyth*, 472 U.S. 511, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985), stated that the purpose of qualified immunity was to " 'permit the resolution of many insubstantial claims on summary judgment' and to avoid 'subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." 472 U.S. at 526.

Several United States Supreme Court cases suggest that the question of whether absolute or qualified immunity shields a prosecutor from liability under § 1983 depends upon the function undertaken by the prosecutor. See *Kalina,* 522 U.S. at 125-27 (applying a functional approach to the question of absolute prosecutorial immunity); *Buckley v. Fitzsimmons,* 509 U.S. 259, 125 L. Ed. 2d 209, 113 S. Ct. 2606 (1993) (endorsing the functional approach); *Burns,* 500 U.S. at 494 (holding that a prosecutor has absolute immunity under § 1983 for participating in a probable cause hearing, but not for giving legal advice to police). Therefore, when considering whether Long is entitled to qualified immunity from McCormick's § 1983 and tort claims, we must pinpoint the role she undertook in swearing out the probable cause affidavit.

A. Nature of prosecutor's role in swearing out a probable cause affidavit.

In *Kalina,* the United States Supreme Court distinguished the work of a prosecutor as an advocate from the act of testifying to facts contained in a probable cause certification. 522 U.S. at 129-30. The facts in *Kalina* are similar to those here. There, the plaintiff filed suit against Kalina, a deputy prosecuting attorney, based on a "Certification for Determination of Probable Cause" that summarized the evidence supporting the charges against plaintiff. 522 U.S. at 121. The Court distinguished Kalina's act of personally vouching for the truth of facts set forth in the certification under penalty of perjury, stating:

"[P]etitioner argues that the execution of the certificate was just one incident in a presentation that, viewed as a whole, was the work of an advocate and was integral to the initiation of the prosecution. That characterization is appropriate for her drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court. Each of those matters involved the exercise of professional judgment; indeed, even the selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause required the exercise of the judgment of the advocate. But that judgment could not affect the truth or falsity of the factual statements themselves. Testifying about facts is the function of the witness, not of the lawyer. . . . Even when the person who makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness." 522 U.S. at 130-31.

Therefore, the Court of Appeals was correct in finding that while a prosecutor is fully protected by absolute immunity when performing traditional functions of an advocate, Long would only be entitled to qualified immunity as to the affidavit she swore out. See 522 U.S. at 131.

B. Waiver of qualified immunity.

McCormick argues that because Long failed to assert the affirmative defense of qualified immunity in her motion to dismiss, only mentioning it in passing, she has waived her right to this defense. In support of his argument, McCormick cites *Gomez v. Toledo*, 446 U.S. 635, 64 L. Ed. 2d 572, 100 S. Ct. 1920 (1980).

The *Gomez* case dealt with the question of whether a plaintiff asserting a § 1983 claim must allege bad faith on the part of the defendant when pleading his or her case. There, the Court observed: "Since qualified immunity is a defense, the burden of pleading it rests with the defendant." 446 U.S. at 640.

Here, Long filed her motion to dismiss, arguing that McCormick's petition failed to state a claim for which relief could be granted. The district court granted the motion prior to Long filing an answer listing her affirmative defenses; thus, Long has not waived the affirmative defense of qualified immunity. Furthermore, in *Saucier v. Katz*, 533 U.S. 194, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001), the United States Supreme Court recently stated:

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' *Ibid.* As a result, 'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.' *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*)." 533 U.S. at 200-01.

Thus, McCormick's assertion that Long waived the affirmative defense of qualified immunity is without merit, and the question of qualified immunity is properly before this court.

### C. Should the heightened pleading standard apply?

Long contends that the Court of Appeals applied the wrong analysis in its determination regarding qualified immunity and urges this court to analyze the qualified immunity issue using a heightened pleading standard. In *Van Deelen v. City of Eudora, Kan.*, 53 F. Supp. 2d 1223 (D. Kansas 1999), a pro se plaintiff alleged that an investigator working for the Douglas County District Attorney's office knowingly made a false determination that probable cause for plaintiff's arrest existed and then knowingly filed a false complaint. The United States District Court for the District of Kansas said:

" 'In the context of a 12(b)(6) motion to dismiss, . . . the qualified immunity defense is limited to the pleadings,' and 'the allegations in the complaint and any reasonable inferences . . . from them' are drawn in favor of the plaintiff. [Citation omitted.] In this context, the court applies 'a heightened pleading standard, requiring the complaint to contain "specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions take were not objectively reasonable in light of clearly established law.' " [Citations omitted.] Once this defense is raised, the plaintiff 'may amend his complaint to include additional "specific, non-conclusory allegations of fact" sufficient to allow the district court to determine immunity.' " 53 F. Supp. 2d at 1232-33.

In a discussion of the procedures available to federal trial judges when handling § 1983 and other claims involving examination of an official's state of mind, the United States Supreme Court stated:

"When a plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. It must exercise

its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *Crawford-El v. Britton*, 523 U.S. 574, 597-98, 140 L. Ed. 2d 759, 118 S. Ct. 1584 (1998).

Because the purpose of the qualified immunity is to spare prosecutors the costs and burdens of baseless claims, many courts felt it was not unreasonable to require plaintiffs to plead specific, nonconclusory allegations of fact, which if proven, would demonstrate a violation of clearly established law.

McCormick correctly asserted at oral argument that the Tenth Circuit decision in *Currier v. Doran*, 242 F.3d 905, 916 (10th Cir. 2001), nullified the heightened pleading standard used previously in Tenth Circuit federal courts under *Breidenbach v. Bolish*, 126 F.3d 1288, 1292 (10th Cir. 1997). Long had requested this court to apply *Breidenbach* in this case. In *Currier*, the Tenth Circuit Court of Appeals performed a review of the Supreme Court case of *Crawford-El*, 523 U.S. 574, and concluded:

"[T]his court's heightened pleading requirement cannot survive *Crawford-El*. There is no relevant difference between the D.C. Circuit's heightened burden of proof at summary judgment and this court's heightened pleading requirement which justifies the continuing viability of the latter after *Crawford-El*. . . . Like the D.C. Circuit's heightened burden of proof, this court's heightened pleading requirement was based on *Harlow*. *See Breidenbach*, 126 F.3d at 1292. Nevertheless, as the Supreme Court made clear in *Crawford-El*, neither the holding nor the reasoning of *Harlow*, a qualified immunity case, warranted a change in the requirements of a plaintiff's affirmative case." 242 F.3d at 916.

Therefore, following the lead of the Tenth Circuit Court of Appeals in regard to the procedure to be used when a § 1983 violation is claimed, this court will not impose the heightened pleading standard.

D. *Franks v. Delaware* hearing.

Long argues that the Court of Appeals failed to perform the analysis used by federal courts reviewing claims that a law enforcement officer submitted a false affidavit, referred to as *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), claims. In *Franks*, 438 U.S. at 155-56, the United States Supreme Court stated:

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."

In *State v. Jacques*, 225 Kan. 38, 587 P.2d 861 (1978), this court modified Kansas law to comport with *Franks*, creating an exception to the previous general rule that a defendant could not dispute allegations in the affidavit presented in connection with an application for a search warrant. Following *Franks*, this court said that an evidentiary hearing would be required where the movant's claim was "supported by allegations and an offer of proof under oath that the affidavit or application for search warrant contains material statements of deliberate falsehood or of reckless disregard for the truth." 225 Kan. at 44.

The Court of Appeals found that McCormick's petition did allege "that Long made false statements and omitted exculpatory information in her affidavit" and that "Long's affidavit was instrumental in the determination of probable cause." 28 Kan. App. 2d at 750-51. It further found that law clearly prohibits swearing to and filing a false affidavit to procure an arrest warrant. 28 Kan. App. 2d at 751.

Long points to the allegations in McCormick's petition as conclusory and nonspecific. The allegations contained in McCormick's petition in this regard are that (1) the affidavit placed the alleged victim of the stalking, Y.H., in two different states on the same date, a factual impossibility that McCormick argues illustrates Long's knowledge of the falsity of those facts; and that (2) Long knowingly omitted exculpatory information. Long urges this court to require McCormick to specify which portions of the affidavit were knowingly false at the time she signed it. Long's argument is that there is no way the Court of Appeals could ascertain whether Long knew the statements were false or the omissions were ex-

culpatory at the time she swore out the affidavit without more specificity from McCormick.

We agree. A plaintiff must meet two requirements at a *Franks* hearing on the truthfulness of statements underlying a search warrant: (1) The movant must demonstrate that the affidavit contained erroneous information, and (2) the movant must demonstrate that the affiant knew that the affidavit was false or at least demonstrate that the affiant recklessly disregarded the truth. See *Franks*, 438 U.S. at 171; *Jacques*, 225 Kan. at 44. Until these two requirements are met, there is no way for an appellate court to determine whether dismissal of the § 1983 claim was proper.

We must note, however, that a *Franks* hearing "applies only where the affiant is a government agent and the defendant's challenge is supported by sworn allegations that false statements made knowingly, intentionally, or with reckless disregard for the truth were included in the affidavit, and the false or reckless statement is necessary to the finding of probable cause." *State v. Jensen*, 259 Kan. 781, 789, 915 P.2d 109, *cert. denied* 519 U.S. 948 (1996). In that regard, the issue of whether Long acted as a private person or as a government agent in swearing out the affidavit becomes an important consideration.

E. State versus private action

In considering a § 1983 claim filed by the parents of Stephanie Schmidt against a state parole officer, this court distinguished private misdeeds of a government employee from wrongful acts committed within the scope of employment, stating: "When a 42 U.S.C. § 1983 (1994) claim is asserted, a State actor may not generally be held liable under the Due Process Clause of the United States Constitution for private misdeeds." *Schmidt v. HTG, Inc.*, 265 Kan. 372, Syl. ¶ 1, 961 P.2d 677, *cert. denied* 525 U.S. 964 (1998). The two recognized exceptions to this general rule are: (1) the special relationship doctrine and (2) the danger creation theory. 265 Kan. at 379.

Under the special relationship doctrine, one who undertakes to render services to another may create a special relationship giving rise to affirmative duties to act under the common law of tort. In

certain circumstances, that person may be held liable for doing so in a negligent fashion. See *DeShaney v. Winnebago Cty. Soc. Servs. Dept.*, 489 U.S. 189, 201-02, 103 L. Ed. 2d 249, 109 S. Ct. 998 (1989).

The elements of the danger creation theory are: "(1) The plaintiff/victim must be a member of a limited and specifically definable group; (2) the defendant's conduct specifically put members of that group at substantial risk of serious, immediate, and proximate harm; (3) the risk was obvious or known; (4) the defendant acted recklessly in conscious disregard of that risk; and (5) the conduct, when viewed in the totality of the circumstances, is shocking to the conscience." *Schmidt*, 265 Kan. 372, Syl. ¶ 1.

In regard to McCormick's claim against Long, it is clear that neither exception would apply. Therefore, McCormick's § 1983 claim against Long will only succeed if the wrongful conduct alleged by McCormick falls within Long's duties as a state employee, constituting government action.

Thus, the *Kalina* case creates a conundrum for both Long and McCormick. If, pursuant to *Kalina*, Long's conduct in swearing out the affidavit is only the act of a complaining witness, and not that of a state prosecutor, then McCormick is foreclosed from pursuing his § 1983 claim because he will not be able to demonstrate state action. If, however, Long's actions are viewed as those of a law enforcement officer, the § 1983 claim may proceed, but the KTCA discretionary function exception might bar McCormick's state tort law claims.

Here, Long was not acting in the capacity of an ordinary complaining witness, but rather was performing a type of hybrid law enforcement function in summarizing police reports and presenting them to the magistrate for review in the form of an affidavit. We find that this function may be characterized as falling within the scope of Long's employment, just as any law enforcement officer signing an affidavit. Therefore, Long's actions were those of a government agent, even though under *Kalina*, she was at the time performing the function of a witness.

F. Qualified immunity from § 1983 claim.

To determine whether Long was entitled to immediate dismissal of McCormick's § 1983 claim based on qualified immunity, our

Court of Appeals applied a two-part test from the Third Circuit Court of Appeals case of *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997), and ultimately found that Long was not entitled to qualified immunity. 28 Kan. App. 2d at 750-51.

In *Saucier v. Katz*, 533 U.S. at 201-02, the Supreme Court set forth a two-part inquiry to be used when ruling upon the issue of qualified immunity:

"Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. [Citation omitted.]. . . .

"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation can be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . .

"[W]e emphasized in *Anderson* [*v. Creighton*, 483 U.S. 635] 'that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' 483 U.S. at 640. *The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.* [Citation omitted.]" (Emphasis added.)

If, following remand and a *Franks* hearing, the case is not dismissed, the issue of Long's qualified immunity should be revisited using the analysis outlined in *Saucier*.

## II. STATE TORT CLAIMS IMMUNITY

When the legislature enacted the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, liability became the rule for negligent or tortious conduct, and immunity the exception. *Hopkins v. State*, 237 Kan. 601, 609, 702 P.2d 311 (1985). The burden of showing immunity under the KTCA is "placed upon the governmental entity or employee to establish entitlement to any of the exceptions set forth in K.S.A. 75-6104." 237 Kan. at 609.

Two types of immunity could apply to a case of this nature. The first is qualified immunity and the second is discretionary immunity. Discretionary immunity is defined within the KTCA by K.S.A. 2000 Supp. 75-6104(e):

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the discretion involved."

Here, Long challenges the Court of Appeals' finding that "[i]n executing the [probable cause] affidavit, Long acted outside her duties as a prosecutor and is not afforded immunity under the KTCA." 28 Kan. App. 2d at 752. Long avers that the Court of Appeals misinterpreted *Kalina v. Fletcher*, 522 U.S. 118, 139 L. Ed. 2d 471, 118 S. Ct. 502 (1997), and misapplied it to the tort claims act issue. Long claims she was required and expected to execute probable cause affidavits as part of her duties as a prosecutor; thus, the KTCA exception should apply to shield her discretionary decision to file an affidavit from liability from tort actions.

*Amicus curiae* Kansas County and District Attorneys Association (KCDAA) joins in Long's argument that the Court of Appeals misapplied *Kalina* when it suggested that she was afforded no immunity at all. The KCDAA convincingly argues that nowhere in *Kalina* does the Supreme Court suggest that a prosecutor should be afforded less protection than a law enforcement officer in swearing out an affidavit. The KCDAA posits that the Court of Appeals incorrectly concluded that under K.S.A. 2000 Supp. 75-6104(e), Long's execution of the probable cause affidavit fell outside her duties and, therefore, she would not be afforded immunity under the KTCA.

The Court of Appeals did not misinterpret the message in *Kalina* that "testifying about facts is the function of the witness, not of the lawyer." 522 U.S. at 130. However, in the concurrence to *Kalina* written by Justice Scalia and joined by Justice Thomas, Justice Scalia noted that a prosecutor swearing out an affidavit performs essentially the same function as police officers, and that while a prosecutor "is absolutely immune from any suit challenging her decision to prosecute or seek an arrest warrant, [she] can be sued if she changes 'functional categories' by providing personal testi-

mony to the Court." 522 U.S. at 131, 135. In his concurrence, Justice Scalia stated:

"That conclusion accords with the common law's treatment of *private* prosecutors, who once commonly performed the 'function' now delegated to public officials like petitioner. A private citizen who initiated or procured a criminal prosecution could (and can still) be sued for the tort of malicious prosecution—but only if he acted maliciously and without probable cause, and the prosecution ultimately terminated in the defendant's favor. Thus, although these private prosecutors (sometimes called 'complaining witnesses'), since they were not public servants, were not entitled to quasi-judicial immunity, there was a kind of qualified immunity built into the elements of the tort." 522 U.S. at 132-133.

In support of the idea that she should be afforded immunity from state tort law claims, Long cites the case of *Howard v. United States*, 2000 WL 1272590 (E.D. Pa. 2000), where the court held no federal tort claims liability was triggered where a DEA agent allegedly misrepresented and omitted facts in application for a search warrant. In *Howard*, unlike here, the plaintiff's claims against individual DEA agents were dismissed due to plaintiff's failure to follow the rules of federal procedure. There, the court considered the sole issue of the liability of the United States government in relation to the claim, evaluated the facts presented, and determined that "the function of identifying what evidence to submit to a judicial tribunal by a police officer or drug agent is a discretionary one even if evidence has been concealed and distorted." 2000 WL 1272590 at *2.

The Court of Appeals cited *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 322, 757 P.2d 272 (1988), where this court stated that "the discretionary function exception is not applicable in those situations where a legal duty exits, either by case law or by statute, which the governmental agency is required to follow." Because prosecutors are not only allowed to file affidavits but are expected to do so in offices across the state, and because no law prohibits prosecutors from doings so, Long contends that her action of swearing out the affidavit must fall within the discretionary function exception. In *Dougan*, we stated: " '[I]t is clear that if a duty is not mandatory or not clearly specified then it is discretionary.' " 243 Kan. at 323-24. Long argues that because prosecutors are nei-

ther required nor prohibited by law from swearing out a probable cause affidavit, this is exactly the sort of nonmandatory activity that fits within the definition of a discretionary function.

It is important to note, however, that *Dougan* held that the discretionary function exception did not apply in that case because "under the KTCA, a governmental agency does not have a discretionary right to violate a legal duty and avoid liability." 243 Kan. at 325.

McCormick contends that, under *Hopkins*, the malicious acts of government employees fall outside the protection of the KTCA. "The exceptions to liability of a governmental entity or employee set out in 75-6104 are not without limitations. Only negligent or wrongful acts or omissions of employees are excepted from liability by 75-6104, while acts or omissions involving more than the lack of ordinary care and diligence are not." *Hopkins*, 237 Kan. at 611. As the Court of Appeals noted, *Kalina* leaves no doubt that clearly established law prohibits the swearing to and filing of a false affidavit to procure an arrest warrant, and Long was charged with knowledge that such an act is unreasonable. See 28 Kan. App. 2d at 751.

Here, this court is presented with a fine distinction between granting Long KTCA immunity for unauthorized conduct within the scope of employment and denying KTCA immunity for unauthorized conduct outside the scope of employment. "Subject to the limitations of the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of the state." *Woodruff v. City of Ottawa*, 263 Kan. 557, Syl. ¶ 5, 951 P.2d 953 (1997). While tort liability would not be precluded for Long's tortious conduct outside the scope of her employment, K.S.A. 2000 Supp. 75-6104(e) precludes tort liability in conjunction with the performance of a discretionary function within the scope of employment.

In *Robertson v. City of Topeka*, 231 Kan. 358, 362, 644 P.2d 458 (1982), this court held that the proper test for applying the discre-

tionary function exception looked to the nature and quality of the discretion exercised. Under this test, the court focuses on whether the act in question is one the legislature intended to shield from liability. Therefore, this court must ultimately decide if the legislature intended to impose upon law enforcement officers the affirmative obligation of ascertaining the truth of all facts contained in summarized statements when swearing out a probable cause affidavit. Because we find that the function Long performed in summarizing police reports in the form of a probable cause affidavit was a discretionary duty within the scope of her employment, we hold that Long is entitled to discretionary function immunity under the KTCA.

McCormick fails to provide specific, nonconclusory allegations allowing a court to make a meaningful determination of whether he claims he is entitled to relief based on Long's alleged commission of any intentional torts outside the scope of her employment. Although the district court case caption named "Cynthia J. Long as a Private Individual," the claims in the body of the petition allege claims arising from Long's actions as an agent of Shawnee County. While McCormick alleges in his petition that he "repeatedly informed the [Shawnee County District Attorney's Office], and other agents of government, that the reports filed by [Y.H.] were thoroughly and completely delusional, and that plaintiff had a plethora of evidence that would utterly refute and disprove the 'reports' filed," McCormick's allegations tie Long's actions to her employment and do not relate to claims against her individually.

" 'In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself.' " *Colombel v. Milan*, 24 Kan. App. 2d 728, 729, 952 P.2d 941 (1998) (quoting *Ripley v. Tolbert*, 260 Kan. 491, Syl. ¶ 2, 921 P.2d 1210 [1996]).

"K.S.A. 2000 Supp. 60-208(a)(1) requires a short and plain statement of the claim showing that the pleader is entitled to relief. However, traditional causes of action and rules for pleading causes of action still occupy an important position in law. Notice pleading did not do away with the traditional causes of action or

the need to at least present the 'bare bones' of the cause of action in the petition in a concise and understandable manner. The claim is to be provided by the petitioner and not by the supposition of the court." *Meyer Land & Cattle Co. v. Lincoln County Conservation Dist.*, 29 Kan. App. 2d 747, Syl. ¶ 7, 31 P.3d 970 (2001).

Under K.S.A. 60-212(b)(6), a defendant may move for dismissal for failure to state a claim upon which relief can be granted. Procedurally, such a motion "shall be treated as one for summary judgment and disposed of as provided in K.S.A. 60-256 and amendments thereto . . . ." In the absence of an understandable statement by McCormick that Long's actions were outside the scope of her employment, we hold that Long is entitled to dismissal of the state tort law claims under the discretionary function exception to the KTCA.

## III. DISTRICT JUDGE'S FACTUAL FINDINGS

Next, we consider Long's claim that the Court of Appeals erred in rejecting the district court's conclusion that McCormick failed to prove causation between Long's action in swearing out the probable cause affidavit and his arrest by University of Kansas officers. Long argues that under this court's standards of review, the Court of Appeals was not free to disregard the district court's factual findings in this regard, citing *R.B. Enterprises, Inc. v. State*, 242 Kan. 241, 747 P.2d 152 (1987). There, we stated: "Findings of fact by the district court which are supported by substantial competent evidence will not be disturbed by this court." 242 Kan. at 248.

The Court of Appeals held that causation was pled within the four corners of McCormick's petition. 28 Kan. App. 2d at 150. We agree. Paragraph 23 of McCormick's petition states that the incident "was in large part, caused by the 'wanton or malicious negligence' of Ms. Long . . . in first issuing a fraudulent 'warrant' for plaintiff for 'felony stalking,' and then in not immediately informing the KUPD that said 'warrant' had been retracted." Upon review of a motion to dismiss, this court is required to assume that the facts alleged by the plaintiff are true. Thus, the district court's finding of no causation was unsupported. The Court of Appeals correctly concluded that whether the officers relied on the arrest

warrant in detaining McCormick is a factual question which survives a motion to dismiss. See 28 Kan. App. 2d at 750.

## IV. PUBLIC DUTY DOCTRINE

Long next complains of the Court of Appeals' discussion of the public duty doctrine. Here, the district court dismissed the tort claims against Long because she owed no independent duty to McCormick; thus, without a prima facie showing of duty, McCormick could not possibly prove negligence. Generally, the KTCA provides for liability only where the government entity or actor, if a private person, would be liable under the laws of this state. See *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 19-20, 20 P.3d 39 (2001). Thus, in order to prove negligence, McCormick must prove the *prima facie* elements of duty, breach, causation, and damages.

The Court of Appeals has previously stated:

"An analysis of the defendants' potential liability for negligence under the KTCA begins and ends with duty. A tort is a breach of duty imposed by law. [Citation omitted.] In order to be liable for negligence, a defendant must owe a duty of care to the injured plaintiff. The existence of a duty is a question of law, and we have unlimited review of questions of law. [Citation omitted.]

"Generally, law enforcement and social services officials owe a legal duty only to the public at large. [Citations omitted.] Under the public duty doctrine, officials have no duty to any individual except where circumstances create a special relationship or specific duty. [Citations omitted.] Where there is no duty, there can be no breach." *Kennedy v. Kansas Dept. of SRS*, 26 Kan. App. 2d 98, 100, 981 P.2d 266 (1999).

Absent some special relationship with or specific duty owed to an individual, liability will not lie for damages. *Conner v. Janes*, 267 Kan. 427, 429, 981 P.2d 1169 (1999).

The district court dismissed McCormick's negligence claim in part because a prosecutor has no duty to an individual. The Court of Appeals agreed that, in performing her legal duties as a prosecutor, there could be no liability to McCormick because the public duty would abrogate a finding of negligence. However, it distinguished the conduct of Long in swearing to the affidavit from her other duties as a prosecutor and found that when she "stepped outside her role as a prosecutor and became a complaining witness,

the public duty doctrine no longer applied." 28 Kan. App. 2d at 751.

Long contends that the "execution of the business records type of affidavit executed by [her] would not make her a witness who would or could be called at McCormick's criminal trial . . . . [Instead she] would have to offer the actual witnesses who were listed in the complaint." Regardless of Long's status as a witness in a criminal trial, *Kalina* found that "[n]o matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause. Even when the person who makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness." 522 U.S. at 130-31. The *Kalina* Court suggests this type of procedure where the prosecutor summarizes the facts within an affidavit is no longer acceptable. In fact, the Court observed that the prosecutors may well abandon the practice of routinely attesting to the facts recited in the certifications of probable cause. 522 U.S. at 131.

Law enforcement officials generally owe a legal duty only to the public at large, except in circumstances creating a special relationship or specific duty. K.S.A. 22-2202(13) defines a law enforcement officer as

"any person who by virtue of office or public employment is vested by law with a duty to maintain public order or to make arrests for violation of the laws of the state of Kansas . . . and includes court services officers, parole officers and directors, security personnel and keepers of correctional institutions . . . while acting within the scope of their authority."

*Kalina* stated that the function performed in giving sworn testimony is that of a witness and not that of a prosecutor. 522 U.S. at 130-31. However, looking at the hybrid function performed by Long, we find that she bore the same type of duty as other law enforcement officers in swearing out a probable cause affidavit and applying for an arrest warrant.

In *Franks v. Delaware*, 438 U.S. 154, 164, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), the Supreme Court stated that, in certain circumstances, the veracity of a warrant must be permitted because

"the Warrant Clause itself . . . takes the affiant's good faith as its premise: '[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . .'" Thus, the Court held that material information included in a warrant affidavit must be "truthful." The Supreme Court explained that "truthful" does not mean "that every fact recited in the warrant affidavit is necessarily correct," but only that the affiant accepted the facts as true. 438 U.S. at 165.

In *United States v. Luna*, 525 F.2d 4, 8 (6th Cir. 1975), the court wrote:

"[I]t must be recognized that law enforcement agents presenting evidence to magistrates could make a mockery of the magistrate's role if, in the necessarily ex parte proceeding, they could freely employ false allegations in order to secure the warrant. The same would likewise be true if the agents could, with impunity, draft affidavits with utter recklessness as to the truth or falsity. In either instance there would be a lack of good faith in the performance of the agent's duty to the judicial office."

A law enforcement officer swearing out an affidavit for use by a magistrate at a probable cause hearing owes a duty of good faith to the judicial office. Therefore, although the public duty doctrine would not seem to shield the prosecutor under the holding in *Kalina*, in the absence of evidence of malice, Long owes a specific duty only to the court, not to McCormick.

On remand, the district court should conduct a *Franks* hearing in regard to McCormick's § 1983 claim to determine the reasonableness of Long's actions. In *Malley v. Briggs*, 475 U.S. 335, 343, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986), the United States Supreme Court stated that in the case of an officer applying for a warrant, "the judicial process will on the whole benefit from a rule of qualified rather than absolute immunity. The *Malley* Court made no distinction between an arrest warrant and a search warrant in a § 1983 action for damages and held that the standard of objective reasonableness defined the issue of whether qualified immunity should be accorded to the officer. 475 U.S. at 344 n.6. McCormick's case should not be allowed to proceed if, using the reasonably well-trained officer standard, Long's actions are found to be objectively reasonable. Following that evidentiary hearing,

barring a finding that the affidavit was made maliciously and without probable cause, the § 1983 claim should be dismissed on the grounds of qualified immunity.

Affirmed in part, reversed in part, and remanded with directions.