NOT DESIGNATED FOR PUBLICATION

No. 126,071

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TERRI E. BAKER, et al.,
*Appellants*,

v.

BLUE VALLEY SCHOOL BOARD, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; GUNNAR A. SUNDBY, judge. Submitted without oral argument. Opinion filed February 23, 2024. Affirmed.

*Linus L. Baker*, of Stilwell, for appellants Terri Baker, Joshua Snider, Carrieann Baumgarten, Julie Myrick, Holly Rook, Mathew Couch, and Laura Klingensmith.

*Michael G. Norris* and *Emily Tung*, of Norris Keplinger Hicks & Welder, LLC, of Leawood, for appellees Olathe Public Schools U.S.D. 233, Olathe Board of Education, Joe Beveridge, Brad Boyd, Leetta Felter, Brian Geary, Brent McCune, Kristin Schultz, and Shannon Wickliffe.

*Stephanie Lovett-Bowman*, *W. Joseph Hatley*, and *Angus W. Dwyer*, of Spencer Fane LLP, Kansas City, Missouri, for appellees Blue Valley U.S.D. No. 229, Blue Valley Board of Education, and Brian Daley.

*Charles E. Branson*, *David R. Cooper*, and *Crystal B. Moe*, of Fisher, Patterson, Sayler & Smith, LLP, of Topeka, for appellees Tenth Judicial District and Laura Brewer.

*Andrew D. Holder*, of Fisher, Patterson, Sayler & Smith, LLP, of Overland Park, for appellees Board of Commissioners of Johnson County, Johnson County Department of Health and Environment, and Sanmi Areola.

1

Before GREEN, P.J., SCHROEDER and CLINE, JJ.

CLINE, J.: In May 2021, a group of parents and their minor children (collectively Appellants) sued the Blue Valley School District and its Board of Education (Blue Valley), the Olathe School District and its Board of Education (Olathe), the Board of Commissioners of Johnson County, Kansas, and the Johnson County Department of Health and Environment (Johnson County), the Tenth Judicial District, and various employees of these entities (collectively Appellees). Appellants mainly challenged the schools' COVID-19 policies under Senate Bill 40 (now codified at K.S.A. 2022 Supp. 48-925c), a Kansas law designed to provide relief to those aggrieved by such policies. Appellants also asserted various federal and state law claims.

The district court found the K.S.A. 2022 Supp. 48-925c claims moot under K.S.A. 2022 Supp. 60-212(b)(1), since the state of emergency relating to COVID-19 in Kansas ended in June 2021. As to the other claims, the district court concluded Appellants failed to state a claim upon which relief could be granted under K.S.A. 2022 Supp. 60-212(b)(6). Appellants now argue the district court erred in dismissing their claims. They also challenge a district court judge's rulings and eventual recusal. After a careful review of the record and arguments on appeal, we see no error by the district court and affirm its dismissal of Appellants' claims. Likewise, we dismiss Appellants' claims about the district court judge because Appellants failed to preserve the claims or acquiesced to the rulings. The judge's rulings were also neither prejudicial nor substantive.

FACTS

*Initiation of Lawsuit in State Court*

On May 3, 2021, Appellants sued Appellees in the District Court of Johnson County, Kansas. Appellants largely sought legal and equitable relief from Blue Valley

2

and Olathe under K.S.A. 2022 Supp. 48-925c—a Kansas law enacted in March 2021 and designed, in part, to provide expedited relief to those aggrieved by COVID-19 policies. According to one parent's K.S.A. 2022 Supp. 48-925c grievance, masks caused his son to have "chronic headaches." Another parent stated in her grievance that masks were not conducive to her children's physical, emotional, or mental health, and inhibited their ability to properly focus during class.

Apart from K.S.A. 2022 Supp. 48-925c, Appellants asserted various federal and state law claims. First, they asserted Blue Valley and Olathe (the School Districts) violated their right to privacy by publicizing their K.S.A. 2022 Supp. 48-925c grievance hearings over Zoom. Appellants next asserted the School Districts violated their right to religious freedom under the Kansas Preservation of Religious Freedom Act, K.S.A. 2022 Supp. 60-5301 et seq. (KPRFA). Third, they asserted the School Districts violated their right to equal protection under both the Kansas Constitution and United States Constitution. Fourth, Appellants asserted Blue Valley and the Tenth Judicial District violated their rights under the Kansas Open Records Act, K.S.A. 45-215 et seq. (KORA), and the Kansas Open Meetings Act, K.S.A. 75-4317 et seq. (KOMA).

*Removal of Lawsuit to Federal Court*

Shortly after Johnson County District Court Judge David W. Hauber was assigned to hear the case, Appellees removed it to federal court under 28 U.S.C. § 1331.

Appellants moved to remand the case, but the federal district court denied their motion. That court also found Appellants' petition failed to meet Federal Rule of Civil Procedure 8, which requires a short and plain statement showing the pleader is entitled to relief. Appellants' petition was 50 pages and included another 32-page document entitled "Petition Addendum and Brief in Support of SB 40 Relief," along with well over 1,000 pages of various attachments.

The federal court ordered Appellants to file an amended complaint with these parameters:

"• Any amended complaint is limited to 25 pages. Plaintiffs are reminded of Rule 8's requirement that pleadings contain a 'short and plain statement of the claim showing that the pleader is entitled to relief' and a 'demand for the relief sought.' Plaintiffs should refrain from pleading excessive legal arguments or commentary that serves only to muddy the water, as well as vague or collective pleadings that serve only to evade substantive review and perpetuate the problems identified in this order.

. . . .

"• The amended complaint should make clear what relief Plaintiffs are seeking on each claim and from each defendant, as well as the legal basis for each claim."

In their amended complaint, Appellants eliminated their federal law claims—namely, their federal equal protection claims. Without jurisdiction under 28 U.S.C. § 1331, the district court remanded the case.

*Remand of Lawsuit to State Court*

Shortly after remand, Appellants sought to change judges under K.S.A. 20-311d. They alleged Judge Hauber could not provide fair rulings since Appellants sought relief against the Tenth Judicial District—the district where Judge Hauber sat. Appellants also noted that Appellees, including the Tenth Judicial District, sought to sever this claim against the Tenth Judicial District.

In the meantime, Judge Hauber granted Appellees' request for an extension of time for responsive pleadings and ordered the parties to attend a case management conference. He also noted Appellants' claim against the Tenth Judicial District

"represents both a misjoined party and a misjoined claim when compared with the other counts against the defendant school districts. Severance and reassignment of [this claim]

4

would have no effect on plaintiffs' ability to litigate common legal issues against the same defendant and by a judge unaffiliated with the Tenth Judicial District."

The Office of Judicial Administration appointed Sixth Judicial District Chief Judge Amy L. Harth to determine whether Judge Hauber should be disqualified from the matter. In September 2021, Chief Judge Harth found a conflict since Judge Hauber had an interest in the case and granted Appellants' motion to recuse.

Appellants later moved to vacate Judge Hauber's rulings. They argued he showed favoritism by granting Appellees' request for an extension of time and issuing a case management order. Appellants also alleged Judge Hauber erred by orally severing the claim against the Tenth Judicial District at a hearing in August 2021. But no journal entry from or transcript of this hearing is in the record.

In November 2021, First Judicial District Senior Judge Gunnar A. Sundby was assigned to the case. He promptly issued another case management order and granted the Tenth Judicial District's request to answer out of time. Appellants objected to neither. Judge Sundby also set a hearing on Appellants' motion to vacate.

Soon after, the School Districts and Johnson County moved to dismiss the case. In essence, Appellees argued Appellants failed to state a claim upon which relief could be granted and the claims involving K.S.A. 2022 Supp. 48-925c were moot. Johnson County noted that Appellants failed to make any allegations against it in their amended complaint.

*District Court's Dismissal of Lawsuit*

In February 2022, the district court heard Appellees' motions to dismiss. The court promptly granted Johnson County's motion since Appellants failed to seek relief against

them. Aside from this, it found Appellants' K.S.A. 2022 Supp. 48-925c claims were moot, and dismissed Appellants' KOMA and KORA claims. The court then took Appellants' privacy, religious freedom, and equal protection claims under advisement.

One year later, the district court issued an order denying relief and dismissing the case.

The district court first dismissed Appellants' KOMA claims against Blue Valley. The court noted the mere fact that a K.S.A. 2022 Supp. 48-925c grievance hearing took place over Zoom did not present a KOMA violation. KOMA explicitly allows meetings via "telephone or any other medium for interactive communication." K.S.A. 75-4317a. Indeed, K.S.A. 2022 Supp. 48-925c(b) authorizes hearings to "be conducted by electronic audio-visual communication when necessary." Apart from this, the court agreed with Blue Valley that, even if conducting the hearing over Zoom was inconsistent with Blue Valley's internal procedures (which Blue Valley denied), there is no recognized Kansas cause of action to compel a government actor to follow its internal policies. Lastly, the court found that KOMA does not prohibit involuntarily muting a member of the public (here, Appellants' counsel) during an open meeting. Citing *Scroggins v. City of Topeka*, 2 F. Supp. 2d 1362 (D. Kan. 1998), the court explained that while KOMA requires certain classes of government meetings be open for the public's observance, it does not mean the public has a right to speak whenever they want, filibuster, or cause disruption at such meetings. See 2 F. Supp. 2d at 1372.

The district court next dismissed Appellants' KPRFA claims. It found Appellants failed to state a claim under KPRFA because they did not allege a "substantial" burden on their religious exercise as required by K.S.A. 2022 Supp. 60-5303(a). The court also disagreed that Appellees' failure to provide religiously oriented special needs educational services violated KPRFA as the provision of such services by a public school district would violate the Establishment Clause of the First Amendment.

6

The district court likewise dismissed Appellants' equal protection claims because they failed to allege that special needs students and non-special needs students are similarly situated. And it found these groups of students are not, in fact, similarly situated for relevant purposes. It then dismissed all remaining claims and the case.

Appellants timely appeal the dismissal of their case, along with Judge Hauber's decision not to recuse himself and Judge Sundby's failure to vacate Judge Hauber's rulings issued before he was disqualified.

ANALYSIS

*Did the district court err in dismissing Appellants' K.S.A. 2022 Supp. 48-925c claims (Counts 3 and 4) under K.S.A. 2022 Supp. 60-212(b)(1)?*

Before examining Appellants' claims under K.S.A. 2022 Supp. 48-925c, a little history is helpful. As explained by the Kansas Supreme Court when it faced a constitutional challenge of K.S.A. 2022 Supp. 48-925c in *Butler v. Shawnee Mission School District Board of Education*, 314 Kan. 553, 555-58, 502 P.3d 89 (2022):

"On March 12, 2020, Governor Laura Kelly proclaimed a state of disaster emergency for the State of Kansas in response to the COVID-19 pandemic. About four months later, the Governor issued executive order no. 20-59 before the 2020-2021 school year, exercising her emergency powers under K.S.A. 2020 Supp. 48-925 during states of disaster. This order provided that 'K-12 public and private schools shall require all students, faculty, staff, vendors and other visitors to public or private K-12 school attendance centers to cover their mouth and nose with a mask or other face covering at all times' unless a listed exception applied.
. . . .
"About eight months later, the Legislature passed 2021 Senate Bill 40, which was signed by the Governor and became effective on March 25, 2021. Section 1 of that legislation addressed COVID-19 mitigation measures affecting 'the operation of any school or attendance center' of Kansas school districts. It provided:

7

'(a)(1) During the state of disaster emergency related to the COVID-19 health emergency described in K.S.A. 2020 Supp. 48-924b, and amendments thereto, only the board of education responsible for the maintenance, development and operation of a school district shall have the authority to take any action, issue any order or adopt any policy made or taken in response to such disaster emergency that affects the operation of any school or attendance center of such school district, including, but not limited to, any action, order or policy that:

(A) Closes or has the effect of closing any school or attendance center of such school district;

(B) authorizes or requires any form of attendance other than full-time, in-person attendance at a school in the school district, including, but not limited to, hybrid or remote learning; or

(C) mandates any action by any students or employees of a school district while on school district property.

(2) An action taken, order issued or policy adopted by the board of education of a school district pursuant to paragraph (1) shall only affect the operation of schools under the jurisdiction of the board and shall not affect the operation of nonpublic schools.

(3) During any such disaster emergency, the state board of education, the governor, the department of health and environment, a local health officer, a city health officer or any other state or local unit of government may provide guidance, consultation or other assistance to the board of education of a school district but shall not take any action related to such disaster emergency that affects the operation of any school or attendance center of such school district pursuant to paragraph (1).

'(b) Any meeting of a board of education of a school district discussing an action, order or policy described in this section, including any hearing by the board under subsection (c), shall be open to the public in accordance with the open meetings act, K.S.A. 75-4317 et seq., and amendments thereto, and may be conducted by electronic audio-visual communication when necessary to secure the health and safety of the public, the board and employees.

'(c)(1) An employee, a student or the parent or guardian of a student aggrieved by an action taken, order issued or policy adopted by the board of education of a school district pursuant to subsection (a)(1), or an action of any employee of a school district violating any such action, order or policy, may request a hearing by such board of education to contest such action, order or policy within 30 days after the action was

8

taken, order was issued or policy was adopted by the board of education. Any such request shall not stay or enjoin such action, order or policy.

(2) Upon receipt of a request under paragraph (1), the board of education shall conduct a hearing within 72 hours of receiving such request for the purposes of reviewing, amending or revoking such action, order or policy. The board shall issue a decision within seven days after the hearing is conducted.

(3) The board of education may adopt emergency rules of procedure to facilitate the efficient adjudication of any hearing requested under this subsection, including, but not limited to, rules for consolidation of similar hearings.

'(d)(1) An employee, a student or the parent or guardian of a student aggrieved by a decision of the board of education under subsection (c)(2) may file a civil action in the district court of the county in which such party resides or in the district court of Shawnee county, Kansas, within 30 days after such decision is issued by the board. Notwithstanding any order issued pursuant to K.S.A. 2020 Supp. 20-172(a), and amendments thereto, the court shall conduct a hearing within 72 hours after receipt of a petition in any such action. The court shall grant the request for relief unless the court finds the action taken, order issued or policy adopted by the board of education is narrowly tailored to respond to the state of disaster emergency and uses the least restrictive means to achieve such purpose. The court shall issue an order on such petition within seven days after the hearing is conducted. If the court does not issue an order on such petition within seven days, the relief requested in the petition shall be granted.

(2) Relief under this section shall not include a stay or injunction concerning the contested action taken, order issued or policy adopted by the board of education that applies beyond the county in which the petition was filed.

(3) The supreme court may adopt emergency rules of procedure to facilitate the efficient adjudication of any hearing requested under this subsection, including, but not limited to, rules for consolidation of similar hearings.' L. 2021, ch. 7, § 1.

"S.B. 40 contains 15 other sections. Several impose similar substantive limits on COVID-19 mitigation measures adopted by other governmental entities. E.g., L. 2021, ch. 7, §§ 2(d)(1) (challenges to community and technical college actions); 6(g)(1) (challenges to executive orders); 8(e)(1) (challenges to actions taken by local government units); 12(d)(1) (challenges to actions taken by board of county commissioners acting as community health board). Remaining provisions deal with other facets of the Kansas emergency management scheme. E.g., L. 2021, ch. 7, §§ 3(a) (altering makeup of

9

Legislative Coordinating Council); 5 (continuing then-ongoing statewide state of disaster emergency); 6(a)-(f), (h) (defining Governor's emergency powers); 7 (limit on Governor's powers in state of emergency related to COVID-19); 9 (penalties for violating executive order imposing curfew or prohibiting entry into disaster-affected area); 10 (definitions applicable to Kansas Intrastate Emergency Mutual Aid Act); 11 (powers of Secretary of Health and Environment); 12(b)(2) (procedure for local health officers proposing certain orders to boards of county commissioners); 13 (about division of powers between Governor and State Finance Council).

"S.B. 40, section 5(a) also extended the state of disaster emergency declared by the Governor's April 20, 2020, proclamation through May 28, 2021. L. 2021, ch. 7, § 5(a). Simultaneously, S.B. 40, section 5(c) purported to revoke 'all executive orders issued during the state of disaster emergency,' effective March 31, 2021. L. 2021, ch. 7, § 5(c)."

Like the plaintiffs in *Butler*, Appellants are parents who objected to the mask policies adopted by their children's schools during the COVID-19 pandemic. Appellants filed suit against the School Districts about a month after K.S.A. 2022 Supp. 48-925c was enacted. They claimed to have filed grievances under K.S.A. 2022 Supp. 48-925c over the School Districts' policies on student masks and quarantine of students exposed to the COVID-19 virus. They alleged the School Districts denied all their grievances in April 2021 and complained Olathe did not conduct hearings or issue decisions on those grievances within K.S.A. 2022 Supp. 48-925c(c)'s allotted timeframe.

In their amended complaint, Appellants sought relief against Olathe for their K.S.A. 2022 Supp. 48-925c claims in the form of: (1) unspecified legal and equitable damages; (2) declaratory judgment that Appellants were aggrieved and denied due process under the Kansas Bill of Rights by these alleged violations of K.S.A. 2022 Supp. 48-925c and Olathe's policies; and (3) an order restraining Olathe from prohibiting their children from attending school in the 2021 or 2022 school year without wearing a mask. They sought relief against Blue Valley in the form of "[l]egal and equitable relief . . . including loss of educational services, costs for tutoring, therapeutic expenses, and

10

special services," and requiring Blue Valley to provide "[t]utoring at school expense, summer services . . . to make up for lost service time, additional related services, and reimbursement to these parents for outside tutoring or programs."

The district court dismissed Appellants' K.S.A. 2022 Supp. 48-925c claims under K.S.A. 2022 Supp. 60-212(b)(1). It found the statute addressed policies and procedures enacted during the state of disaster emergency related to COVID-19. It noted the declaration of emergency had expired and determined it had no authority to issue injunctive relief after the expiration of the declaration of emergency. As a result, the court held that it lacked subject matter jurisdiction over these claims because they were moot. And it pointed out the statute contains no provision authorizing monetary damages or attorney fees.

Appellants argue these claims are not moot because they suffered compensable injuries from the School Districts' policies and actions. And, apart from compensatory damages, they seek a declaratory judgment that "their rights were violated."

*Appellants' argument that K.S.A. 2022 Supp. 48-925c provides for monetary damages is insufficiently briefed and therefore abandoned.*

Appellants do not address the district court's ruling that, on its face, K.S.A. 2022 Supp. 48-925c does not authorize monetary damages. Instead, they simply re-assert that several categories of economic damages *should* be awarded to compensate for the time their children did not attend school. But they provide no statutory citation or other legal authority authorizing such relief, nor do they explain why they believe the court somehow misread the statute. Instead, they simply say: "As stated in both the Appellee's Butler Briefs, monetary damages are awardable." In their opening brief, Appellants do not explain what the "Butler Briefs" are or provide a record citation pointing us to the arguments they rely on to support their assertion. On the other hand, Blue Valley explains

11

the Butler Briefs are briefs filed in *Butler* and correctly note Appellants' reference to those outside briefs—particularly without providing any record citation—does not satisfy the requirements of Supreme Court Rule 6.02(a)(5) (2023 Kan. S. Ct. R. at 36).

In one of their reply briefs, Appellants provide the missing record citations for the Butler Briefs. At the district court, apparently, Appellants unilaterally filed Governor Kelly's amicus brief and Shawnee Mission School District's appellate brief in *Butler*, claiming those briefs establish monetary damages are available under K.S.A. 2022 Supp. 48-925c. Yet, again, Appellants simply point us to those briefs generally without providing any argument about why K.S.A. 2022 Supp. 48-925c provides for monetary damages. And, even more problematic, the record citations they provide do not support their statements. The arguments in the briefs cited by Appellants claimed that K.S.A. 2022 Supp. 48-925c was unconstitutional—which is not an argument Appellants are making. Those briefs did not explain how K.S.A. 2022 Supp. 48-925c could be read to authorize monetary damages—they simply each contained a stray reference that monetary damages could be sought in support of their arguments that K.S.A. 2022 Supp. 48-925c violated the separation of powers doctrine.

Appellants' arguments on appeal about this issue are inadequate. Supreme Court Rule 6.02(a)(5) requires a brief to contain arguments and authorities supporting such arguments, and failure to do so constitutes abandonment. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). Put simply, issues not sufficiently briefed or incidentally raised are considered abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

We therefore find Appellants have abandoned their assertion that the district court erred in ruling that K.S.A. 2022 Supp. 48-925c includes no authority for monetary damages.

*Appellants' argument that their K.S.A. 2022 Supp. 48-925c claims are not moot is insufficiently briefed and therefore abandoned.*

Our Supreme Court explored the mootness doctrine at length in *State v. Roat*, 311 Kan. 581, 584, 466 P.3d 439 (2020). In short, it explained that "[a] case is moot when a court determines that '"it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights."'" 311 Kan. at 584 (quoting *State v. Montgomery*, 295 Kan. 837, 840-41, 286 P.3d 866 [2012]). "A case that is moot is properly subject to a motion to dismiss. [Citation omitted.]" *Roat*, 311 Kan. at 584. And we have unlimited review of such dismissals. 311 Kan. at 590.

"Upon a prima facie showing of mootness, the burden shifts to the party opposing the mootness challenge to show the existence of a substantial interest that would be impaired by dismissal or that an exception to the mootness doctrine applies." *Roat*, 311 Kan. 581, Syl. ¶ 7. Appellants fail to meet their burden. The declaratory judgment they seek would serve no purpose other than as an advisory opinion addressing stale issues, and they make no argument that this case qualifies for an exception to the mootness doctrine.

Much like their argument for compensatory damages under K.S.A. 2022 Supp. 48-925c, Appellants have not adequately briefed their argument that the district court erred in finding their K.S.A. 2022 Supp. 48-925c claims are moot since the state of disaster emergency related to COVID-19 has expired. Appellants only argue it does not matter "that [K.S.A. 2022 Supp. 48-925c] may have expired or that there is no longer a mask mandate . . . because the harm to these parents and children have occurred and accrued," and their "respective injuries have accrued and can be redressed." As for the harm or injuries they seek to redress, they largely rely on their claims for compensatory damages. But, as noted above, they have failed to show such damages are available to them under

K.S.A. 2022 Supp. 48-925c. And the only other relief under K.S.A. 2022 Supp. 48-925c that Appellants seek on appeal is a declaratory judgment that "their rights were violated."

By its plain language, K.S.A. 2022 Supp. 48-925c was enacted to address actions, orders, and policies made or taken by boards of education in response to the COVID-19 pandemic. K.S.A. 2022 Supp. 48-925c(a)(1). Shortly after Appellants sued on their grievances about the COVID-19 policies adopted by the School Districts, two significant events occurred: (1) The state of disaster emergency related to COVID-19 expired and (2) the School District's policies at issue were rescinded. K.S.A. 2022 Supp. 48-924b(a) ("The state of disaster emergency that was declared by the governor pursuant to K.S.A. 48-924, and amendments thereto, as a result of the COVID-19 health emergency, by proclamation on March 12, 2020, . . . is hereby ratified and continued in existence from March 12, 2020, *through May 28, 2021*." [Emphasis added.]); see also Executive Order No. 21-23 (rescinding certain executive orders relating to the COVID-19 pandemic in 2021).

There is now no live K.S.A. 2022 Supp. 48-925c controversy, and Appellants articulate no purpose that would be served by the declaration they seek. It would not redress any ongoing or prospective injury but would rather serve as merely an impermissible and retrospective advisory decision. See *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011).

We therefore affirm the district court's dismissal of Appellants' K.S.A. 2022 Supp. 48-925c claims.

*Did the district court err in dismissing Appellants' remaining claims under K.S.A. 2022 Supp. 60-212(b)(6)?*

The district court dismissed Appellants' remaining claims after finding they had failed to state a claim upon which relief could be granted. "Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review." *Jayhawk Racing Properties v. City of Topeka*, 313 Kan. 149, 154, 484 P.3d 250 (2021). An appellate court views the well-pleaded facts in a light most favorable to the plaintiff and assumes as true those facts and any inferences reasonably drawn from them. If those facts and inferences state any claim upon which relief can be granted, then dismissal is improper. Dismissal is proper only when the allegations in the petition clearly demonstrate the plaintiff does not have a claim. *Kudlacik v. Johnny's Shawnee, Inc.*, 309 Kan. 788, 790, 440 P.3d 576 (2019); see K.S.A. 2022 Supp. 60-212(b)(6).

Kansas is a notice-pleading state, meaning a petition need only include a "short and plain statement of the claim showing that the pleader is entitled to relief" and a demand for relief. K.S.A. 2022 Supp. 60-208(a)(1); *Williams v. C-U-Out Bail Bonds*, 310 Kan. 775, 784, 450 P.3d 330 (2019). District and appellate courts construe a petition facing a motion to dismiss the same way:  We must assume the factual allegations are true and ask whether those factual allegations (along with any inferences reasonably drawn from them) state a valid legal claim. But while we must accept a plaintiff's description of what has occurred factually, we need not accept the plaintiff's conclusions about the legal meaning of those facts. See *Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, 413-14, 479 P.2d 875 (1971).

*Privacy Right Violations (Counts 1 and 2)*

The first two counts of Appellants' amended complaint stated claims for violating student privacy against the respective School Districts. Appellants complain the School Districts conducted public hearings over Zoom to address their grievances and claim

15

unspecified "student data as enumerated in K.S.A. 72-6313" was disclosed at these hearings. The School Districts moved to dismiss these claims because there is no private right of action under the Kansas Student Data Privacy Act, K.S.A. 72-6312 et seq. (KSDPA).

On appeal, Appellants' argument about privacy rights is limited to a paragraph. While they seemingly concede they lack a statutory cause of action under the KSDPA, they now assert that they claimed violation of "a Kansas Bill of Rights privacy right, a common law privacy right, and a privacy right under [Blue Valley's] board policy" below. They then rely on Kansas' "notice pleading" standard, arguing that they provided the School Districts with "sufficient notice" of the nature of Appellants' claims.

To begin, the only basis Appellants alleged in their amended complaint for their privacy right claims was the KSDPA. They did not reference any of the other alleged privacy rights, much less explain how these rights were violated by or in the Zoom hearings. They stretch Kansas' notice pleading standard beyond its reasonable limits by claiming the School Districts had notice that these claims involved any privacy rights beyond those set forth in the KSDPA:

> "Notice pleading did not do away with the traditional causes of action or the need to at least present the bare bones of the cause of action in the petition in a concise and understandable manner. The claim is to be provided by the petitioner and not by the supposition of the court." *McCormick v. Board of Shawnee County Comm'rs*, 272 Kan. 627, Syl. ¶ 11, 35 P.3d 815 (2001).

Even if we include Appellants' assertion in their responses to the School Districts' motions to dismiss and the hearing on those motions that a right to privacy generally exists within these sources, Appellants never explained how that right was violated or implicated. The mere assertion that rights exist does not confer sufficient notice about how the School Districts' action violated those rights. Appellants failed to present even

the "bare bones" of a cause of action, and as such, they improperly ask that their claim be provided "by the supposition of the court."

We therefore see no error in the district court's dismissal of Appellants' privacy right claims under K.S.A. 2022 Supp. 60-212(b)(6).

*Kansas Preservation of Religious Freedom Act Violations (Count 5)*

Appellants alleged the School Districts' policies requiring students to wear masks at school and Blue Valley's refusal to provide special needs religious educational services violate the KPRFA. They asserted that requiring the children to "wear masks when masks interfere with their learning ability is contrary to [their] religious exercise as a parent." And they allege Blue Valley's refusal to provide special needs religious educational services or pay for the parents to provide special needs religious educational services at home or a private religious school requires the parents "to forfeit [their] religious practices and beliefs in exchange for [the children] obtaining special services." As for their religious belief which they alleged the School Districts violated, Appellants claimed to have "religious beliefs regarding how and in what manner [their] children should be educated."

Under the KPRFA, the "[g]overnment shall not *substantially* burden a person's civil right to exercise of religion even if the burden results from a rule of general applicability." (Emphasis added.) K.S.A. 2022 Supp. 60-5303(a).

> "'Burden' means any government action that directly or indirectly constrains, inhibits, curtails or denies the exercise of religion by any person or compels any action contrary to a person's exercise of religion, and includes, but is not limited to, withholding benefits, assessing criminal, civil or administrative penalties, or exclusion from government programs or access to government facilities." K.S.A. 2022 Supp. 60-5302(a).

The district court dismissed Appellants' KPRFA claim because it found Appellants did not allege a "substantial" burden on their religious exercise as required by K.S.A. 2022 Supp. 60-5303(a). The court also disagreed that Appellees' failure to provide religiously oriented special needs educational services violated KPRFA as the provision of such services by a public school district would violate the Establishment Clause of the First Amendment.

Appellants' arguments on this issue ballooned on appeal, taking up a large part of their briefing. Rather than clarifying their position or explaining why the district court erred, they raise various new topics which were never pled or argued below and combine their arguments about Counts 5 through 7 in a confusing and almost incomprehensible way. They again rely on Kansas notice pleading standards, claiming the district court viewed their allegations too narrowly. But they do not fill the factual gaps in their allegations which caused these claims to be dismissed.

*Appellants fail to show the mask policies violated KPRFA.*

On appeal, Appellants repeat their conclusory statements that the School Districts' now-expired mask policies "burden" their religious exercise without providing facts to support those allegations. Appellants never explained the connection between the mask requirement and their religious beliefs, nor did they claim to have any religious beliefs that would preclude them from sending their children to school wearing masks. Instead, they described their putative religious belief as a generalized "God-given duty to provide an education, or see that one is provided, to each of [their] children according to [their] parental values." And Appellants' objection to masks seems to be secular, rather than based on a religious belief, since they alleged wearing a mask "interfere[d] with [their children's] learning ability." While the KPRFA does recognize indirect burdens on religious exercise, the district court correctly concluded the law does not permit the kind of aggressive bootstrapping Appellants attempted.

18

The district court is not "required to accept conclusory allegations on the legal effects of events . . . if these allegations do not reasonably follow from the description of what happened." *McCormick*, 272 Kan. at 646. Conclusory dissatisfaction with masks does not amount to an allegation of a "substantial" burden on religious freedom, nor does a substantial burden "reasonably follow" from such dissatisfaction. As such, Appellants failed to state a claim of a KPRFA violation based on the School Districts' mask policies.

*Appellants fail to show the special education policies violated KPRFA.*

In an argument that blurs the distinction between Count 5 (their KPRFA claim) and Count 7 (their equal protection claim), Appellants argue on appeal that Blue Valley's "policies" put Appellants in the position of having to provide their children with special education services but unable to do so in connection with their religious practice. Appellants contend that K.S.A. 72-3421 and K.S.A. 72-3463 combine to create a so-called "compulsory-school-plus burden framework." While difficult to discern from Appellants' briefing, Appellants are apparently claiming the statutory compulsion to provide special education services burdens their religious exercise. But Appellants misunderstand and mischaracterize these laws.

First, as Blue Valley correctly explains, Kansas imposes a duty on parents of special education students—also called "exceptional students" under Kansas law—to require their child "to attend school to receive the special education and related services which are indicated on the child's [individualized education program] *or to provide for such services privately*." (Emphasis added.) K.S.A. 72-3421(a). In making their argument on appeal, Appellants ignore the italicized language in that statute and misquote it as if that language does not exist. They then rely on this mischaracterization to claim K.S.A. 72-3421 "requires a particular kind of school providing a specific curriculum" which is not true. Appellants—and all parents of exceptional Kansas children—are free to privately provide special education services. K.S.A. 72-3421(a).

Even though K.S.A. 72-3463 provides that "[n]o special education services shall be provided in connection with religious courses, devotional exercises, religious training, or any other religious activity," that statute only prohibits *public schools* from providing religiously oriented special education services—not parents or private schools. And this restriction is merely a state law codification of the United States Constitution's prohibition on establishment of religion by governmental subdivisions. If a parent pursues the private option, they may combine special education services with religious practice, but they cannot force a public school district to do so on their behalf.

Next, if the parent or guardian of an exceptional child who attends a private school asks a Kansas public school where the child resides to provide special education services, then K.S.A. 72-3462 sets forth the parameters of how that public school can satisfy that request. This statute empowers the school district to determine the site for provision of such services—either at a private or public school—in consultation with the parent or guardian of the child and the officials of the private school. K.S.A. 72-3462.

Appellants claim Blue Valley's apparent requirement that special education services supplied by Blue Valley be provided in a public school environment under K.S.A. 72-3462 burdens their religious exercise. But like their argument about the School Districts' mask policy, Appellants do not explain how Blue Valley's apparent requirement burdens their religious exercise. Again, Appellants are not required by law—or Blue Valley—to send their exceptional children to public schools. This statute only addresses the situation where the parents ask the public school to provide special education services. Appellants remain free to provide religious special education services privately under K.S.A. 72-3421(a).

On appeal, Appellants argue Blue Valley has burdened their religious exercise by withholding "the benefit of special education and related services being provided at government cost." Like many of their arguments on appeal, this argument was not

20

presented in any meaningful way to the district court, nor do Appellants cite the record showing where they made this argument below as required by Rule 6.05. But, even on appeal, Appellants fail to explain how the mere non-funding of private religious special education burdens the exercise of their religious beliefs.

Ultimately, Appellants did not plead facts explaining why wearing masks at school or receiving special education services at a public school is a burden—let alone a substantial burden—on their religious exercise. We see no error in the district court's dismissal of this claim.

*Equal Protection Violations (Counts 6 and 7)*

Appellants brought two equal protection claims below. Their first claim, in Count 6, alleged the School District's mask policies violated their right to equal protection under the Kansas Constitution Bill of Rights because: (1) The schools provided an exemption to mask policies if masks interfered with a special needs student's learning, but they did not provide this exemption to students who were not special needs; (2) the schools provided medical exemptions to mask policies, but they did not provide an exemption to students who found masks interfered with their learning; and (3) the schools provided medical exemptions to mask policies, but they did not provide an exemption "when the mask requirement burdens the religious exercise of the parent or student." Appellants sought injunctive and declaratory relief only against Blue Valley, even though they asserted the claim against Olathe as well.

In Count 7, Appellants alleged Blue Valley violated their right to equal protection under the Kansas Constitution Bill of Rights because Blue Valley does not provide religious special education services or fund Appellants' provision of those services through homeschooling their children. Appellants cite various provisions of Kansas' Special Education for Exceptional Children Act, K.S.A. 72-3403 et seq. (SEECA),

21

apparently claiming Blue Valley's compliance with SEECA violates their equal protection rights and burdens their exercise of religion under KPRFA. Appellants requested "injunctive and declaratory [*sic*] regarding the facial and as applied application of Blue Valley's unequal treatment of [Appellants]."

For both equal protection claims, Appellants generally asserted they were similarly situated to other Kansas students and parents of Kansas school-aged children.

In dismissing both claims, the district court determined Appellants failed to allege that special needs students and non-special needs students are similarly situated for relevant purposes. The court further found Appellants could not satisfy this requirement of an equal protection claim since special needs students and non-special needs students are not similarly situated. The court also agreed with Blue Valley's contention that Blue Valley is prohibited from providing religious special education services by the Establishment Clause in the United States Constitution.

Section 1 of the Kansas Constitution Bill of Rights guarantees equal protection under the law. It is "essentially a direction that similarly situated people be treated alike." *State v. Little*, 58 Kan. App. 2d 278, 279, 469 P.3d 79 (2020). But if the comparative groups are not similarly situated, there is no equal protection violation. *United States v. Woods*, 888 F.2d 653, 656 (10th Cir. 1989). Thus, to survive the School Districts' motions to dismiss, Appellants needed to plead a plausible claim that they were similarly situated to non-special needs students and parents of those students yet not treated equally with those non-special needs students and parents.

Appellants claim the district court erred in dismissing their claims because:  (1) they alleged they are similarly situated to other Kansas students and parents of school aged children, and (2) the court should have applied Kansas' notice pleading standards to determine "whether, *under any set of facts*, [Appellants] can prove an equal protection

violation." The School Districts counter that Appellants did not allege how or why the two groups they seek to compare are similarly situated and their conclusory allegation that the groups are, in fact, similarly situated is insufficient, even under Kansas' notice pleading standard.

The School Districts also alleged Appellants' claims in Count 6 are moot. Appellants sought only equitable relief in the form of an injunction or declaratory judgment (and, again, only against Blue Valley). Since the School Districts' mask policies are no longer in effect, there is nothing left to enjoin and no live controversy about which to seek a declaration. And Olathe pointed out that not only did Appellants seek no relief against Olathe, but they lack standing to request such relief since the children who formally attended Olathe withdrew from Olathe schools in 2021 and did not re-enroll.

We agree Appellants' equal protection claim in Count 6 is moot. First, in defending against the School Districts' mootness argument, Appellants mischaracterize the relief they pled below. While they are correct that claims for compensatory and nominal damages can avoid mootness challenges, they sought neither in Count 6. Instead, they requested only injunctive and declaratory relief against Blue Valley in Count 6 and never argued anything different below. The catch-all assertion at the end of their amended complaint on which they now rely—seeking "all legal and equitable available relief under law and equity and for such other relief as the Court deems just and fair"— does not provide the School Districts with notice that Appellants are seeking compensatory or nominal damages under Count 6, what Appellants' relevant loss might be resulting from the allegations in Count 6, or what the causal connection between those allegations and loss might be.

Appellants cannot revive their claim by altering it on appeal. We therefore find Appellants failed to sufficiently plead the type of relief they now claim.

23

We also agree Appellants have failed to plead an equal protection claim in Count 7 of their amended complaint because they failed to plead dissimilar treatment from a similarly situated group. They have failed to allege facts showing they were similarly situated with non-exceptional students and, even accepting their facts as true, we do not find they were similarly situated with non-exceptional students.

"To state an equal protection claim, a plaintiff must show the government treated him differently than others who were similarly situated." *Wiggins v. Sisco*, No. 17-3080-SAC, 2018 WL 1035161, at *2 (D. Kan. 2018) (unpublished opinion) (citing *Penrod v. Zaravas*, 94 F.3d 1399, 1406 [10th Cir. 1996]). To be "'similarly situated'" the individuals "'must be prima facie identical in all relevant respects or directly comparable in all material respects; although this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar indeed.'" *Ebonie S. ex rel. Mary S. v. Pueblo School Dist. 60*, 819 F. Supp. 2d 1179, 1189 (D. Colo. 2011) (quoting *United States v. Moore*, 543 F.3d 891 [7th Cir. 2008]).

Appellants have failed to allege they were treated differently than individuals who are identical or directly comparable in all material respects. Instead, they broadly assert they "are similarly situated to other Kansas students and parents." But this conclusory statement does not show how special needs students and non-special needs students are similarly situated. Appellants must allege more than "'broad generalities'" in identifying a comparator for the purpose of an equal protection challenge. *Stradford v. Secretary Pennsylvania Department of Corrections*, 53 F.4th 67, 74 (3d Cir. 2022).

Appellants offer merely a conclusory allegation that they are similarly situated without providing facts to indicate this allegation is plausible on its face. And we cannot reasonably infer these facts because, as the district court correctly noted, Appellants are not similarly situated with all school-aged children in Kansas, which is the only group they identify. By definition, exceptional and non-exceptional students are not situated

24

similarly with respect to educational services. Their failure to identify similarly situated persons dooms their equal protection claim. *Pueblo School Dist. 60*, 819 F. Supp. 2d at 1189.

Next, while Appellants complain that Blue Valley did not treat them the same as other Kansas students, that is exactly what Blue Valley did. Appellants did not plead that Blue Valley funds or provides homeschooled non-exceptional students with educational services. Nor did they plead that it funds or provides secular homeschooled students with special educational services. And while Appellants complain that Blue Valley did not treat them equally, equal treatment does not appear to be their goal. Instead, they seek special treatment which is not afforded other homeschooled and private-schooled students. They seek state funding for their children's religious homeschool education when this funding is not provided to parents of other homeschooled and private-schooled students.

Lastly, Blue Valley does not prohibit Appellants from homeschooling their children in accordance with their beliefs or force them to do anything that is contrary to those beliefs. It simply refuses to pay for homeschooled religious instruction—for exceptional or non-exceptional students—because it is prohibited from doing so by K.S.A. 72-3463 and the Establishment Clause of the United States Constitution. Blue Valley is a public school, funded by state government. As such, it is prohibited from incorporating religion into its curricula—whether for special needs students or otherwise. See *Lee v. Weisman*, 505 U.S. 577, 587-92, 112 S. Ct. 2649, 120 L. Ed. 2d 467 (1992) (reiterating the "fundamental limitations imposed by the Establishment Clause," particularly in public schools where students are especially susceptible to coercion). Appellants fail to adequately address this argument because they improperly frame it. Appellants claim in their reply brief to Blue Valley that the Establishment Clause cannot be invoked to justify excluding some members of the community from an otherwise generally available public benefit because of their religious exercise. But, again, the

"benefit" Appellants seek is publicly funded homeschool or private education—which is not a benefit generally available in Kansas.

We agree with the district court's finding that Appellants failed to plead a plausible equal protection claim based on Blue Valley's failure to provide or pay for religious homeschool special education services.

*Kansas Open Records Act Violations (Count 9)*

In their amended complaint, Appellants alleged the Tenth Judicial District refused to produce video or audio recordings of remote proceedings from a case apparently open to the public. In its refusal, the Tenth Judicial District relied on K.S.A. 45-219 and K.S.A. 2022 Supp. 45-221(a)(1), and Supreme Court Rule 1001(e)(4) and 1001(e)(8) (2023 Kan. S. Ct. R. at 651), and Supreme Court Rule 362 (2023 Kan. S. Ct. R. at 463). Appellants argued the Tenth Judicial District's refusal was not made in good faith and without a reasonable basis in law or fact. But the district court determined that Appellants eventually received the record and dismissed the issue. Indeed, Appellants conceded they received the record. The court also determined nothing in the record suggested the refusal was made in bad faith and denied Appellants' request for attorney fees.

Appellants claim the district court erred in dismissing this claim and not awarding attorney fees, but they fail to explain why the district court's decision was wrong. Instead, they simply repeat their assertion that the Tenth Judicial District's refusal to provide access to the recordings was not in good faith and without a reasonable basis in the law or fact. They cite to no portion of the record undercutting the court's determination nor do they even address the court's reasoning for its findings. And while they claimed below that Blue Valley also violated KOMA, they have not raised this issue on appeal.

Issues not adequately addressed in briefing are treated as waived or abandoned. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). We therefore find Appellants abandoned their claims in Count 9 on appeal for failure to adequately brief them.

*Conclusion*

The United States District Court for the District of Kansas ordered Appellants to amend their complaint because their initial complaint was "dense and confusing," with "considerable commentary and legal arguments that serve little purpose other than to muddy the waters and garner attention." Appellants did not resolve this issue in their amended complaint. Nor did they resolve this issue on appeal. Their brief is voluminous and convoluted and appears to present political opinions rather than facts. It likewise provides very little legal authority. In *McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996), the Ninth Circuit observed:

> "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges.
> . . . .
> "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."

As the Tenth Circuit Court of Appeals stated: "It is not the role of either the court or the defendant to sort through a lengthy, poorly drafted complaint and voluminous exhibits in order to construct plaintiff's causes of action." *Schupper v. Edie*, 193 Fed. Appx. 745, 746 (10th Cir. 2006) (unpublished opinion). Because Appellants' amended complaint failed to meet K.S.A. 2022 Supp. 60-212(b)(6), we affirm the district court's dismissal of Appellants' remaining claims.

*Did District Court Judge David W. Hauber's tardy recusal prejudice Appellants?*

Appellants argue Judge Hauber erred in failing to recuse himself sooner. But it is unclear why they raise this issue on appeal. Chief Judge Harth granted Appellants' motion to recuse in September 2021, more than a year before the district court dismissed the case. Apart from arguing "the lower court erred in failing to recuse itself," Appellants fail to seek relief on appeal or argue error below. Appellants' argument on appeal is instead regarding Judge Hauber's rulings in a prior case. See *In re Adoption of T.M.M.H.*, 307 Kan. at 912 (An issue not briefed adequately is considered abandoned.).

Moreover, once Judge Hauber recused himself, Appellants did not raise to the district court the issue of his recusal—much less the timing of his recusal. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 801, 466 P.3d 1207 (2020) (Issues not raised before the district court cannot be raised on appeal.).

But even if we considered this issue, Appellants fail to establish prejudice. According to the record on appeal, Judge Hauber made three rulings in the case. First, Judge Hauber scheduled a hearing on Appellants' initial complaint. Second, Judge Hauber granted Appellees' joint request for an extension of time to file responsive pleadings. Third, Judge Hauber set the matter for a case management conference. In this order, Judge Hauber noted the parties should discuss whether severance of the claim against the Tenth Judicial District was appropriate.

As for Judge Hauber's first ruling, Appellants did not object. And as to the latter two actions, Appellants did not object when Judge Sundby issued nearly identical orders. Not only did Judge Sundby grant an out-of-time answer, but he also ordered a case management conference. Moreover, Judge Hauber only provided procedural rulings.

Because Appellants failed to raise the issue below or establish prejudice, we dismiss this issue.

*Did the district court abuse its discretion in dismissing Appellants' motion to vacate?*

Lastly, Appellants assert the district court abused its discretion in dismissing their motion to vacate Judge Hauber's rulings. The Tenth Judicial District argues Appellants acquiesced to Judge Hauber's rulings, which were all procedural. It points out the three rulings were merely procedural and did not impact the case going forward.

The three rulings at issue are: (1) Judge Hauber scheduled a hearing on Appellants' initial complaint in May 2021 (which apparently never occurred since the case was removed); (2) Judge Hauber granted Appellees' joint request for an extension of time to file responsive pleadings in July 2021; and (3) Appellants apparently participated in a case management conference set by Judge Hauber, but this conference is not in the record. See *Smith v. Printup*, 254 Kan. 315, 353, 866 P.2d 985 (1993) ("'A party must designate an adequate record on appeal to substantiate contentions made to the appellate court.'").

First, Appellants fail to explain how they were prejudiced by any of these rulings or how any of them tainted the proceedings after Judge Hauber's recusal. Next, as the Tenth Judicial District pointed out, Appellants did not dispute these rulings and did not move to vacate them until September 2021. Thus, Appellants arguably acquiesced in them. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1271, 136 P.3d 457 (2006).

Under the doctrine of acquiescence, once a party acquiesces to a ruling, that party impliedly waives the right to appeal it. *Uhlmann v. Richardson*, 48 Kan. App. 2d 1, 17, 287 P.3d 287 (2012). "[A]cquiescence should be found only when the party's actions

"'clearly and unmistakably show an inconsistent course of conduct or an unconditional, voluntary and absolute acquiescence.'"' 48 Kan. App. 2d at 17.

Not only does the Tenth Judicial District fairly raise examples of Appellants' acquiescence, but Appellants' failure to object to Judge Sundby's rulings also shows an inconsistent course of conduct. Judge Sundby's rulings were nearly identical to the rulings Appellants now challenge. Because of this clear and unmistakable inconsistency and Appellants' complacency with Judge Hauber's rulings, Appellants have acquiesced, and we dismiss their claim.

CONCLUSION

Appellants have abandoned most of their arguments on appeal or failed to show how the district court erred in its rulings. We therefore affirm the district court's dismissal.

Affirmed.